GARY MORRIS
CANDICE MORRIS
1805 N.E. 67th Street
Oklahoma City, OK  73111
(214) 628-1817

Plaintiffs, Pro Se



# FILED

NOV 0 4 2011

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

GARY MORRIS and
CANDICE MORRIS,

    Plaintiffs,

    v.

1) CENTURY 21 ALL PRO REALTY, an
   unknown business entity;
2) FEDERAL NATIONAL MORTGAGE
   ASSOCIATION d/b/a FANNIE MAE;
3) OKLAHOMA REO CLOSING & TITLE
   SERVICES, LLC;
4) MARY L. BERRY, individually and
   doing business as CENTURY 21 ALL
   PRO REALTY;
5) GENNY ULREY, an individual;
6) KEENAN KIRBY, an individual;
7) JENNIFER L. WIEWEL, an individual
8) RONALD W. MURRAY, an individual;
9) LARETTA M. MURRAY, an individual;
10) DOES 1-10

    Defendants.

**PLAINTIFFS COMPLAINT TO
RECOVER DAMAGES - RICO CASE
STATEMENT INCLUDED**

Case No. CIV- _____

CIV-11-1298 M

---

## PLAINTIFFS COMPLAINT to RECOVER DAMAGES - RICO CASE STATEMENT INCLUDED

Come now Pro Se Plaintiff(s) GARY MORRIS and CANDICE MORRIS, to file their

COMPLAINT with incorporated Racketeer Influenced and Corrupt Organizations Act

(RICO) Case Statement. This COMPLAINT and RICO Case Statement include the facts

the plaintiffs are relying upon to initiate their cause of action to recover damages.

### Jurisdiction and Venue:

This court has jurisdiction over this matter pursuant to 28 U.S.C. 1331.  Federal Court jurisdiction is required here due to the federal Racketeer Influenced and Corrupt Organizations Act claim which centers around numerous violations of federal statues, including mortgage fraud, wire fraud and mail fraud.  Plaintiffs' damages are in excess of $75,000.00.

### Overview:

In the instant Complaint, Plaintiffs Gary Morris and Candice Morris allege that individuals Mary Berry, Broker/Owner d/b/a Century 21 All Pro Realty; Keenan Kirby, FANNIE MAE Assistant Vice President; Genny Ulrey of Oklahoma REO Closing & Title Services, LLC.; Jennifer L. Wiewel, Realtor; Ronald W. Murray, Realtor; and Laretta M. Murray, Realtor;  using the power and authority of their legitimate business positions and agent relationships in FANNIE MAE, Century 21 All Pro Realty, and Oklahoma REO Closing & Title Services; are RICO persons who have established and are operating a RICO enterprise by association-in-fact with the purpose of conducting mortgage fraud.

This RICO enterprise knowingly procures funding and hides evidence of insufficient collateral for FANNIE MAE mortgage loans with the intent to defraud the United States Government, financial institutions, and the general public.  The participants in the subject RICO scheme, each of them, is alleged to have committed the unlawful acts described in the instant Complaint in violation of: 18 U.S.C. 1001; 18 U.S.C. 1010; 18 U.S.C. 1012; and 18 U.S.C. 1014.

The RICO persons were motivated by expectations of financial and professional gains.  In furtherance of their interstate racketeering scheme, the RICO defendants utilized mail services and wire services on numerous occasions and thereby violated 18 U.S.C. 1341 and 18 U.S.C. 1343.  Additionally, said RICO defendants, as part of their conspiracy, presented false documents and false sworn statements to government officials while

engaged in activities to complete the objectives of the RICO enterprise. The described unlawful activities violated 18 U.S.C. 1001 and 18 U.S.C. 1010.

A $111,744.00 FANNIE MAE loan was represented to the U.S. government on a HUD-1 Settlement Statement (File #152587) as a 97% loan-to-value mortgage on 3/22/10 reportedly without an appraisal. The Defendants knew and failed to disclose on 3/22/10 that the subject property sold at $115,200.00 and securing the $111,744.00 FANNIE MAE mortgage had a government appraisal on 1/4/10. Defendants hid existence of that 1/4/10 FHA Appraisal (HK533OKC) because it showed property/collateral value to be only $109,000.00, far under the $115,200.00 sales price that was used as the value basis for the mortgage loan that Defendants funded by wire on 3/22/10.

Defendants, each of them, knew or should have known that the appraised value of $109,000.00 effectively made the $111,744.00 mortgage loan to be a high risk mortgage loan in excess of 100% of the property value. The $350.00 cost of the FHA certified government appraisal which documented the $109,000.00 value was intentionally omitted from Line 804 on the HUD-1 Settlement Statement (File #152587). This incomplete HUD-1 statement was submitted to the U.S. government and hid the existence of the appraised value. The $109,000.00 appraised value was attached to the subject property from 1/4/10 through 6/4/10 per FHA regulations. No further appraisals were done on the subject property between the 1/4/10 FHA appraisal and the 3/22/10 loan funding.

The enterprise enlisted the services of Century 21 All Pro Realty licensed Realtors to perform a series of schemes to willfully over-value real property that ultimately deprived the Plaintiffs of honest services and injured them financially. As a direct consequence of the well orchestrated schemes of the enterprise, within a 30 day period, the Plaintiffs were contracted to pay approximately an additional $60,000.00 for the same two bedroom, "as-is" foreclosure house built in 1935. This happened during the country's most publicized

real estate recession in decades.  This level of enterprise profit multiplied by even as few as five FANNIE MAE buyers a month, in just this region of the State of Oklahoma would produce damages in the amount of  $300,000.00 monthly and $3,600,000.00 annually.  FANNIE MAE potentially closes 50-100 properties per month in Oklahoma and contracts the servicing of any resulting mortgage loans to financial institutions throughout the United States.

The enterprise initially extorted $12,232.00 by way of additional purchase price and closing cost from the Plaintiffs.  Subsequently the enterprise extorted an additional $47,880.00 in mortgage interest to be paid in monthly installments for a higher interest rate FANNIE MAE mortgage loan for the next thirty years.  Thirty days prior to entering the second purchase contract for the same property, the Plaintiff(s) had previously negotiated and  fully executed a purchase contract with FANNIE MAE for a lower sales price ($107,000.00) and were approved for a more financially desirable FHA loan.  This was all before the Plaintiffs became aware they were victims of the mortgage fraud schemes of the enterprise.

Plaintiffs believe that court approved discovery will likely reveal this Oklahoma region of the enterprise to be just a prototype for other FANNIE MAE employee / Real Estate broker / Title company officer, association-in-fact RICO enterprises.  This illegal enterprise model is well suited for operation in the various states where FANNIE MAE-owned properties are represented exclusively by a single real estate broker and title/closing agency in an area.  Real Estate brokers and Title officers will be motivated to participate in the RICO activities by the promise of a long term exclusive FANNIE MAE-owned property sales contracts for their area.

The unique "no appraisal" option for purchase mortgage loans is a mortgage lending exception held exclusively by FANNIE MAE.  That lending exception presents an

enticing opportunity for otherwise legitimate business persons to conduct an unlawful enterprise for mortgage fraud.  This enterprise was caught in the act of the mortgage fraud when they worked together to submit government documents that hid the undisputable evidence of the deficient property value for the loan they funded by wire on 3/22/10.

Plaintiffs are initially seeking relief for intentionally inflicted RICO enterprise triple damages amounting to almost $225,000.00; punitive damages for intentional contract related fraud, emotional distress; and an ORDER for the Defendants to immediately cease and desist the activities of the RICO enterprise.  Trial by JURY DEMANDED.

## I.

## FACTS  COMMON TO ALL COUNTS

1.      Plaintiffs Gary Morris and Candice Morris (hereinafter referred to as "Gary and Candice") were long time residents of Dallas, Texas.  Gary in December 2009, whose Texas employer had ceased its operations eighteen months prior, obtained gainful employment that required he relocate and reside in Oklahoma City, Oklahoma.

2.      Defendant Mary L. Berry is a licensed real estate broker in the State of Oklahoma.  At all relevant times Defendant Berry owns and operates a real estate firm known as Century 21 All Pro Realty in Oklahoma City, Oklahoma.  Other individual Defendants: Laretta Murray, Ronald Murray and Jennifer L. Wiewel are licensed real estate agents / Realtors, whose principal place of business is Oklahoma City, Oklahoma.  They are each employees, agents, assigns, and affiliates of Defendant Berry.

3.      Defendant FANNIE MAE is a corporation licensed to engage in the business of real estate mortgage loans and in the due course of their business retains services of agent brokers and designated title companies to sell real property obtained when mortgage

loans on said properties have been foreclosed upon. Fannie Mae owned the subject
real property as a result of a foreclosed security on the property. Defendants Berry,
Laretta Murray, Ronald Murray, and Jennifer Wiewel are each engaged in the sales of
Defendant Fannie Mae owned homes **and** Genny Ulrey of/and Oklahoma REO Closing
& Title Services, LLC., **ALL** work as the agents, affiliates and assignees of Defendant
FANNIE MAE. Does 1-10 are the fictitious names of entities who are the agents,
affiliates, employees, and otherwise work in concert with the other Defendants in their
business of selling and closing residential and other real property.

4.      Defendant OKLAHOMA REO CLOSING & TITLE SERVICES, LLC, is licensed to
engage in closing and title services in the State of Oklahoma. Oklahoma REO
CLOSING & TITLE SERVICES, LLC was the closing and title company designated
by FANNIE MAE for the canceled and the completed purchase transaction for the
same subject property between the Plaintiffs and FANNIE MAE. At all relevant times
the title company known as Oklahoma REO Closing and Title Services, LLC. operates
in Tulsa, Oklahoma, with a branch office in Oklahoma City, Oklahoma. Defendant
Oklahoma REO Closing and Title Services is responsible for the actions of its
employees, agents, assigns, and affiliates.

5.      Defendant Keenan Kirby is an individual who resides and works in Dallas, Texas.
Defendant Kirby is employed as Assistant Vice President of FANNIE MAE, a
corporation licensed to engage in the business of real estate mortgage loans. In the due
course of FANNIE MAE business, Kirby works with contracted agent brokers and title
companies to sell and transfer real property obtained when mortgage loans on said
properties have been foreclosed upon.

6.      Defendant Genny Ulrey is a licensed title officer in the State of Oklahoma and

designated signor for FANNIE MAE.  At all relevant times Defendant Ulrey operates a

title company known as Oklahoma REO Closing and Title Services, LLC. in Tulsa,

Oklahoma, with a branch office in Oklahoma City, Oklahoma.  Defendant Ulrey and

Oklahoma REO Closing and Title Services, LLC employ other individual title officers,

whose principal place of business is Oklahoma City, Oklahoma and they are each

employees, agents, assigns, and affiliates of Defendant Ulrey and Oklahoma REO

Closing and Title Services, LLC.

7.      On or about December 12, 2009, Gary and Candice Morris drove from Dallas, Texas to

Oklahoma City, Oklahoma, to inspect the neighborhood of two houses they found on

an internet real estate site.  Gary and Candice were very interested in the home located

at 1805 NE 67th Street, Oklahoma City, Oklahoma, hereinafter referred to as the subject

property and/or subject home.  Gary and Candice called the telephone number posted

on a sign at the subject home and were introduced by telephone to Defendant Ronald

Murray who agreed to show the property to Gary and Candice.

8.      On or about December 15, 2009 at 1:07 PM, Candice emailed Defendants Murray

informing them that she and Gary were interested in purchasing the property located at

1805 NE 67th Street; Oklahoma City, OK 73111 (subject home).  Defendants Murray,

following up on representations made during their showing of the subject home,

offered to represent Gary and Candice in the purchase of the subject home.

Reasonably relying on the offer to enter into an agreement for real estate agency

services, Candice provided Defendants Murray, their Realtors, detailed confidential

financial information to secure a loan for the property.

9.      On or about December 15, 2009, Defendant Laretta Murray referred Plaintiffs to
Lender, Shelby Weston of Red Rock Mortgage & Lending.  Financial information was
given to Lender Weston by Plaintiff Gary Morris during telephone conversation.
Lender Weston prepared a mortgage loan Pre-Approval letter he emailed to Plaintiffs
and Laretta Murray for an FHA loan with 3.5% down payment and $115,000.00
maximum purchase price.

10.     On or about the evening of December 15, 2009, Defendant Laretta Murray offered and
made arrangements for Defendants Murray to provide transportation for Gary and
Candice from the Will Rogers Airport in Oklahoma City to Century 21 All Pro Realty
Office to write offer to purchase the subject home.

11.     From the date Defendants Murray met and solicited business from Gary and Candice to
the date Gary and Candice accepted their offer to enter into a purchase agreement to
purchase the subject home with representation by Defendants, there were many
conversations between Defendants Murray and Gary and Candice.  At no time during
these conversations and exchange of emails did Defendants disclose their contractual
relationship with Defendant FANNIE MAE and their obligation to obtain the highest
sales price for the properties listed on behalf of FANNIE MAE.  There were countless
occasions from December 12, 2009 through December 16, 2009, for Defendants
Murray to disclose to Plaintiffs Morris that the Defendants Murray had a contractual
obligation for sole representation of Seller, FANNIE MAE, in any transaction for the
property located at 1805 NE 67th Street; Oklahoma City, OK 73111.

12.     **At no time** prior to inducing Gary and Candice to enter into a contractual agreement
for professional, licensed real estate agency by Defendants and each of them, did any

of the Defendants give Gary and Candice any written/printed disclosure that Century
21 All Pro Realty, Real Estate Associates and employees could only represent the
Seller, FANNIE MAE with respect to the subject property.

13.   There were countless occasions prior to when the Transaction Broker form was
executed by Plaintiff Gary Morris on the afternoon of 12/16/09 that Defendants had
opportunity to communicate that they represented sellers in the subject transaction.

14.   The missed opportunity by Defendants to disclose actual representation prior to
inducing Plaintiffs to enter into that Transaction Broker contract include: several
telephone conversations, numerous emails, an additional day trip from Texas to
Oklahoma for a second showing of said property prior to writing the offer to purchase
and the car ride from the Oklahoma Will Rogers Airport to the Century 21 All Pro
Realty Office in Oklahoma City.

15.   **At no time** did Defendants Laretta Murray or Ronald Murray inform Gary and Candice
that they were loyal and committed to obtain the best purchase arrangements on behalf
of Seller, Defendant FANNIE MAE and therefore offered no independent
representation to buyers with respect to the subject property.

16.   **At no time** did Defendants Murray verbally inform Gary and Candice that Century 21
All Pro Realty, its associates and employees could only represent the Seller on said
property that they had a prior existent relationship with seller of subject property to
represent seller's best interest with respect to any sale of the subject property.

17.   **At no time** did Defendants Murray inform Gary and Candice that on a purchase valued
over $100,000.00 that Gary and Candice would not have representation on their behalf
for the transaction.

18.     Defendants Murray were to be paid a sales commission if they obtained the Buyers for a purchase contract on the subject property at close of contract.

19.     On or about December 16, 2009, Defendant Laretta Murray made a fraudulent and misleading statement to Gary and Candice when they questioned the meaning of the Transaction Broker form prior to agreeing to sign said form.

20.     On or about December 16, 2009, Defendant Ronald Murray was present in the Century 21 All Pro conference room when Defendant Laretta Murray gave the fraudulent and misleading interpretation of the Transaction Broker disclosure form to Gary and Candice.

21.     Defendant Ronald Murray, agent of record for the subject contract, offered no explanation of the form and made no attempt to correct the fraudulent and misleading statement made by Defendant Laretta Murray to Gary and Candice.

22.     Defendant Ronald Murray knew Defendant Laretta Murray's explanation of the Transaction Broker disclosure saying, "There is a competent group of professionals on the other side of the office (C21 All Pro Realty) that take care of the Seller (FANNIE MAE) and we (Defendants Murray) take care of you (Plaintiffs Morris) was grossly misleading and inaccurate.

23.     On or about December 17, 2009 at 1:15 PM, Defendant Laretta Murray transmitted via electronic mail to Plaintiffs Morris a property list with a directive "not to talk to any other realtors, just call Laretta or Ron." Plaintiffs Morris further understood this directive to confirm Defendants Laretta and Ron were their Realtors.

24.     On or about December 22, 2009, after several out of the ordinary situations and discoveries, Plaintiff Candice Morris had a telephone conversation with Broker Mary

Berry.  Plaintiff Candice Morris made a request for Seller, FANNIE MAE, to pay

Buyers closing cost.  Also, during that conversation, Broker Berry informed Plaintiff

Candice Morris that Century 21 All Pro and all its real estate agents and employees

represented only FANNIE MAE.  Plaintiff Candice Morris informed Broker Berry this

was the first knowledge that Plaintiffs Morris did not have Realtor representation.

Plaintiff Candice Morris further explained that they questioned the Transaction Broker

form prior to Plaintiff Gary Morris signing the form and it was expressed that

Defendants Murray represented Plaintiffs Morris.

25.    On or about December 22, 2009, during telephone conversation, Broker Berry offered

to return Plaintiffs Morris deposit and then stated she would not sell said property to

Plaintiffs Morris again if they canceled and came back with Realtor representation.

26.    Final purchase contract was signed by Seller, FANNIE MAE, on December 23, 2009.

27.    On or about January 14, 2010, counter offer requesting Seller to pay Buyer closing

costs was submitted to and rejected by Seller, FANNIE MAE almost three weeks after

initial counter offer request on December 22, 2009.

28.    On or about January 18, 2010, Plaintiff Gary Morris canceled the purchase contract

with $107,000 sales price referencing the emailed letter to Broker Berry dated 1/10/09

as reasons for termination.

29.    On or about February 2, 2010, Plaintiff Gary Morris submitted a new offer to purchase

said property located at 1805 NE 67th Street; Oklahoma City, OK with a Realtor from

an outside company.  Several counter offers were exchanged between Plaintiff Gary

Morris and Seller, FANNIE MAE during February 2, 2010 through February 3, 2010.

30.     On or about February 4, 2010, Plaintiff Gary Morris submitted a counter offer to pay full January 4, 2010 dated FHA appraised value of $109,000 and to include the 3.5% FANNIE MAE advertised INCENTIVE to Buyers of FANNIE MAE owned properties for closing cost and/or new Whirlpool appliances. The full FHA appraisal was attached to the counter offer.

31.     On or about February 5, 2010, Seller, FANNIE MAE sent counter offer to Plaintiffs Morris at $110,815 sales price. This $110,815 sales price was above the known FHA appraised value of $109,000 and above the previously contracted price of $107,000 that Plaintiff Gary Morris cancelled on January 18, 2010 for the same property. No other bids had been submitted for said property at this point.

32.     On or about the afternoon of February 5, 2010, Plaintiffs Morris were informed another Buyer submitted an offer on said property. Both Plaintiff Gary Morris and the other Buyer were given about 48 hours to submit their best offer.

33.     On or about February 8, 2010, Jennifer L. Wiewel, Broker Berry and FANNIE MAE awarded purchase contract to other Buyer who submitted the lower bid. The respective real estate agents notified their clients. Plaintiffs Morris suffered significant emotional distress with this news.

34.     On or about February 9, 2010, Broker Berry informed the Plaintiffs Realtor Grewell that a mistake had been made and another bidding period was set. This additional bid was in lieu of correcting the initial error and awarding the purchase contract to Plaintiff Gary Morris, the first highest bidder.

35.     This second attempt to thwart the sale of the property to Plaintiffs Morris by re-opening the bid period forced Plaintiff Gary Morris to: a) increase the bid/sales price to

$115,200.00, b) waive the Seller advertised concessions of 3.5% for closing cost and/or appliances, and c) change to an undesirable FANNIE MAE loan with a higher fixed 30 year interest rate instead of using his pre-approved FHA loan with lower fixed interest. Plaintiff Gary Morris was forced to make all the above changes in efforts to secure the property.

36.     The detailed confidential financial information emailed to Defendants Murray on December 15, 2009, was used by Century 21 All Pro Realty and its employee, Jennifer L. Wiewel to fraudulently breach fiduciary duty to Plaintiffs Morris.  This fraudulent breach of fiduciary resulted in: a) over $8,000.00 higher sales proceeds for FANNIE MAE, b) higher sales commissions for Broker Berry and Century 21 All Pro Realty, c) a new 30 year loan with a credit worthy customer, and d) projected $47,880.00 additional interest proceeds from the home loan for FANNIE MAE.

37.     The FHA Appraisal (HK533OKC) valued at $109,000 for subject property was on file, attached and valid from January 2010 – June 2010 was delivered by fax to the Century 21 All Pro Realty office with full documentation by Edmond, Oklahoma Realtor, Kristyn Grewell to Defendants: Century 21 Broker/Owner Mary L. Berry; Jennifer L. Wiewel; and Keenan Kirby, Assistant Vice President of FANNIE MAE; on or about February 4, 2010.  Genny Ulrey and Oklahoma REO Closing & Title Services were in possession of this appraisal direct from Plaintiffs' lender Red Rock Mortgage & Lending in January 2010 as a result of Plaintiffs previous transaction for the same subject property.

38.     No further property appraisals were ordered or procured for the subject two bedroom property, built in 1935.

39.    The following interstate financial institutions have procured, funded, and/or serviced this over 100% loan-to-value mortgage on the subject property on or after March 22, 2010 through June 25, 2010: Red Rock Mortgage & Lending, Flagstar Capital Markets, and the Federal National Mortgage Corporation (FANNIE MAE).  At least two of these financial institutions are not and were not at the time, within federal lending regulations to authorize, procure and/or fund 100%+ loan-to-value initial purchase mortgages.

## II.

## FRAUDULENT INDUCEMENT TO ENTER CONTRACT

40.    Plaintiffs Morris incorporate by reference each and every allegation contained in paragraphs 1 through 39 as though fully set forth herein.

41.    Defendants Murray, acting in concert with the express plan, intention, and designs of the other Defendants: Berry, Wiewel, and Kirby, knowingly and willfully solicited an offer to purchase subject home that was listed for sale on behalf of FANNIE MAE by Defendants, without the knowledge and consent of Gary and Candice.

42.    Defendants Murray offered assistance and represented that they were the best realtors to assist Gary and Candice with an attempt to purchase the subject home and would in fact provide the best representation of their interests.

43.    Gary and Candice did in fact reasonably rely upon the express representations of Defendants Murray and Berry, in their capacity as licensed realtors with knowledge of the real estate market for foreclosed homes in the Oklahoma City area and thereupon accepted the offer of Defendants representation of Gary and Candice as their realtors to enter into the process of purchasing the subject home.

44.   As a proximate result of Gary and Candice's reasonable reliance on the representations and solicitations of Defendants and each of them, Gary and Candice suffered compensatory damages in an amount in excess of $75,000 and punitive damages in an amount in excess of $10,000, with the exact amount to be determined by a jury.

## III.

## FRAUDULENT BREACH OF FIDUCIARY DUTY

45.   Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 44 as though fully set forth herein.

46.   Defendants and each of them owed a fiduciary duty of loyalty to Gary and Candice to protect their financial interests and conduct themselves in the subject home purchase in a manner which at all times advanced the best interests of Gary and Candice from the time that Defendants offered their professional, licensed services and Gary and Candice accepted said services and representation of their financial interests.

47.   Defendants and each of them violated their fiduciary duties to Gary and Candice when they represented the adverse interests of the Seller in the same transaction, without prior full disclosure of their interests to Gary and Candice.

48.   Further, Defendants and each of them violated their fiduciary duties to Gary and Candice when they willfully, knowingly, and maliciously misrepresented material facts to Gary and Candice and wrongfully inflated the value of the subject home well over appraised market value and denied Gary and Candice financial incentives and finance rates given to similarly situated buyers who were not represented by the Seller's undisclosed agents.

49.   As a direct and proximate result of the misrepresentations and misconduct of Defendants and each of them, Gary and Candice suffered compensatory and punitive damages.

## IV.

## FRAUD AND DECEIT

50.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1

through 49 as though fully set forth herein.

51.    Defendants and each of them owed Gary and Candice a duty to deal with them truthfully

and honestly when they solicited and contracted with Gary and Candice to represent them

in the purchase of the subject home.

52.    Gary and Candice reasonably relied on the representations by Defendants and each of

them, regarding all of the details of the purchase transaction of the subject home.  Further,

Gary and Candice reasonably relied on full disclosure of material facts which had bearing

on the subject transaction by Defendants and each of them.  Plaintiffs believe Broker

Berry and her associates knew the exterior peeling paint on the subject property was

suspected to be lead based paint.  Ronald Murray told Plaintiffs during the first

December 2009 property showing that there had been a recently canceled purchase

contract on the property.  Plaintiffs believe the excessive cost to correct the peeling

exterior paint on the house trim and window panes to be a factor in that cancelation.

53.    Defendants and each of them made specific, intentional, reckless and malicious false

representations which they knew or should have known would be relied upon by Gary and

Candice in the subject transaction to purchase an Oklahoma City residence listed by

Defendants.

54.    As a direct and proximate cause of reliance upon the intentional, malicious, reckless, and

wonton material representations by Defendants and each of them, as well as the

intentional and/or reckless failure to disclose material facts known by Defendants and

each of them, Gary and Candice suffered compensatory and punitive damages.

**V.**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Mary Berry, individually and d/b/a Century 21 All Pro Realty; Keenan Kirby; Genny Ulrey; Jennifer Wiewel; Ronald Murray; and Laretta Murray)**

55.   Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1

through 54 as though fully set forth herein.

56.   Defendants and each of them engaged in wonton, intentional, malicious and reckless

misconduct which they knew or should have known would cause personal financial injury

and would inflict harm and injury to the physical and mental well being of Gary and

Candice.

57.   Gary and Candice have suffered extreme physical and emotional distress from the sudden

additional financial loss of over $60,000.00 in less than 30 days on the purchase of a two

bedroom, 75 year old foreclosure home sold in "as-is" condition.  Gary and Candice had

been under contract to purchase the same home with the same seller two weeks prior

before canceling to acquire independent broker services.   The Morris family required

immediate affordable housing since Gary Morris had been working in Oklahoma for less

than two months after being unexpectedly unemployed in Texas for the eighteen months

just prior.  Gary and Candice's distress was a proximate result of the deliberate

misconduct and misrepresentations of Defendants and each of them, in connection with

the purchase of the subject home.   Gary and Candice have suffered compensatory and

punitive damages as a further proximate cause of the misconduct described herein by

Defendants and each of them.

**VI.**

PLAINTIFFS' COMPLAINT and RICO CASE STATEMENT
Morris v. Century 21 All Pro Realty, et al
Page 17 of 80

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT

58.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1

        through 57 as though fully set forth herein.

59.     Defendants Murray and Century 21 All Pro Realty in the course of their real estate

        business committed unfair and deceptive trade practice by misrepresenting that they could

        represent Gary and Candice as their realtors in the purchase of the subject home.

60.     Defendant Ronald Murray in the course of his real estate business committed unfair and

        deceptive trade practice by omitting to inform Gary and Candice during the numerous

        opportunities between December 12, 2009 and December 16, 2009 that Defendants and

        Century 21 All Pro Realty could not represent Gary and Candice before they flew from

        Dallas, Texas to Oklahoma City, OK on December 16, 2009 to write an offer to purchase

        the subject home.

61.     Defendants Murray in the course of their real estate business committed unfair and

        deceptive trade practice by omitting to inform Gary and Candice during the numerous

        opportunities after December 16, 2009 through December 22, 2009, when Defendant

        Broker Berry informed Candice Morris during telephone conversation that all Century 21

        All Pro Realty agents and employees represented only the Seller (FANNIE MAE).

62.     Defendant Laretta Murray in the course of her real estate business committed unfair and

        deceptive trade practice by her explanation of the Transaction Broker form when Gary

        and Candice Morris questioned the meaning on December 16, 2009.  Defendant Laretta

        Murray statement that, " There are qualified professionals on the other side of the office

        (Century 21 All Pro) that take care of the Seller (FANNIE MAE) and we (Ronald and

        Laretta Murray) take care of you (Gary and Candice)", was fraudulent and misleading.

63.   Defendant Ronald Murray in the course of his real estate business committed unfair and deceptive trade practice by omitting to correct the false information provided by Defendant Laretta Murray concerning her explanation of the Transaction Broker form to Gary and Candice prior to Gary Morris signing the form on December 16, 2009. Defendant Ronald Murray was present in the Century 21 All Pro Realty conference room and listening when Defendant Laretta Murray made the misleading statement to Gary and Candice.

64.   Gary and Candice did in fact reasonably rely upon the express representations of Defendants and each of them, in their capacity as licensed realtors with knowledge of the real estate market for foreclosed homes in the Oklahoma City area and thereupon accepted the offer of Defendants representation of Gary and Candice as their realtors to enter into the process of purchasing the subject home.

65.   This practice of misleading and omitting to inform Gary and Candice about Defendants contractual obligation to represent only the Seller (FANNIE MAE) was unconscionable. Defendants Murray knew an independent realtor could represent Gary and Candice's highest and best interest at no additional cost.

66.   Defendants Murray and Century 21 All Pro Realty stood to gain additional real estate commission at the close of contract by procuring the Buyers.

67.   Defendants Murray and Century 21 All Pro Realty knew Plaintiffs Gary and Candice Morris would be purchasing a home valued over $100,000.00 without any representation. This act was excessively one-sided in favor of Defendants Murray and Century 21 All Pro Realty.

68.   As a proximate result of Gary and Candice's reasonable reliance on the representations
and solicitations of Defendants and each of them, Gary and Candice suffered
compensatory damages in an amount in excess of $75,000 and punitive damages in an
amount in excess of $10,000, with the exact amount to be determined by a jury.

## VII.

### VIOLATION OF 18 U.S.C. Section 1962(c), CONDUCTING

### THE AFFAIRS OF AN ENTERPRISE THROUGH
### PATTERN OF RACKETEERING ACTIVITY (RICO)
### (Mary Berry, individually and d/b/a Century 21 All Pro Realty; Keenan Kirby; Genny Ulrey; Jennifer Wiewel; Ronald Murray; and Laretta Murray)

69.   Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1
through 68 as though fully set forth herein.

70.   Plaintiffs allege Defendants and each of them worked together to willfully overvalue the
subject property and subsequently influence three financial institutions, the Federal
National Mortgage Association (FANNIE MAE), Red Rock Mortgage & Lending, and
Flagstar Capital Markets into funding a mortgage loan with a non-disclosed, <u>over</u>
100% loan-to-value on 3/22/10. These violations resulted in actual and/or projected
personal and/or professional financial gain for the Defendants.

71.   The subject property was initially under contract in January 2010 for $107,000 to the
same Buyers, Plaintiffs Morris.  The property was also appraised by FHA for $109,000 in
January 2010.  The subject property was then re-sold to the same Buyer for $115,200 in
February 2010 with an initial mortgage funded for <u>over</u> 100% of the $109,000 value
without any further appraisals.

72.    Sworn declarations are on file by Defendant Broker/Owner Mary Berry; her employees

and associate real estate agents that the two real estate transactions with the Plaintiffs

were handled the same as all other Century 21 All Pro Realty transactions. Those

declarations were investigated and accepted as factual by HUD Investigator Eduardo

Garza, Jr. and the Oklahoma Fair Housing Department in 2010.  All charges of alleged

discrimination were dismissed. If those under oath, sworn to a U.S. Government

official, admissions by Century 21 All Pro Realty; Broker/Owner; its real estate agents;

and its employees are true; then Plaintiffs allege each of these Defendants, by their own

admission, operate in this same alleged fraudulent manner routinely with the general

public.

73.    The Co-Conspirator Defendants are each liable "person" within the meaning of 18 U.S.C.

Section 1961(3) and 18 U.S.C. Section 1962(c) of RICO.

74.    The Co-Conspirator Defendants committed the predicate act of "racketeering activity" as

that term is defined in 18 U.S.C. Section 1961(1).  The Co-Conspirator Defendants

committed the act of financial institution fraud in violation of 18 U.S.C. Section 1344 on

3/22/10.  The Defendants intentionally funded a FANNIE MAE mortgage loan on a

willfully overvalued property.  The non-disclosed 100% loan-to-value mortgage was then

transferred to other financial institutions (Red Rock Mortgage & Lending, Flagstar Bank,

and FANNIE MAE) while represented as a 97% loan-to-value mortgage during the period

of 3/22/10 – 6/30/10.

75.    The predicate act of "racketeering activity" committed by the Co-Conspirator

Defendants: Berry, Wiewel, R. Murray, and L. Murray; by their own sworn statements on

file with HUD and Fair Housing that the transactions with the Plaintiffs Morris were

"routine" operations, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. Section 1961(5).

76.   Each Co-Conspirator Defendants directly or indirectly participated in the conduct of an "enterprise" as that term is defined in 18 U.S.C. Section 1961(4).

77.   The activities of the "enterprise" affected interstate commerce when information and decisions of financial institutions and the U.S. Government were impacted by the transferring and wire funding of the falsely represented mortgage loan.

78.   The Co-Conspirator Defendants conducted their enterprise through an ongoing open ended pattern of racketeering activity as indirectly admitted by some of the Defendants under oath in their statements made to HUD Investigator Garza (See paragraph 72 above).

79.   The above described racketeering activities amount to a common course of conduct in real estate sales and mortgage fraud intended to deceive and harm Plaintiffs.  Each racketeering activity is related, has similar purposes, involves the same or similar participants and methods of commission, and has similar results affecting similar victims, Buyers of real property and financial institutions.

80.   Each Co-Conspirator Defendant conducts the affairs of the enterprise because they knowingly and willingly participated in the enterprise.

81.   Plaintiffs have been and continue to be injured by the Co-Conspirator Defendants' violations each month the additional mortgage interest from the fraudulent loan is paid by the Plaintiffs.

82.   Plaintiffs' injuries are directly and proximately caused by the Co-Conspirator Defendants' racketeering activity as described above.

83.    By virtue of their violations of 18 U.S.C. Section 1962(c), the Co-Conspirator Defendants are jointly and severally liable to Plaintiffs for three times the damages Plaintiffs have sustained, punitive damages, and the cost of this suit, including reasonable attorney fees.

84.    Interstate commerce is affected when home loans and financial institutions are involved in fraudulent mortgage transactions with over-valued collateral.

### RICO CASE STATEMENT – RESPONSES

Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 84 as though fully set forth herein.

1.    **The alleged unlawful conduct** is in violation of 18 U.S.C.1962 (a) and (d) for Defendant **Oklahoma REO Closing & Title Services**. **The alleged unlawful conduct** is in violation of 18 U.S.C. 1962(a), (c), and (d) for Defendants Mary L. Berry d/b/a Century 21 All Pro Realty; Keenan Kirby;  Genny Ulrey; Jennifer Wiewel; Laretta Murray; and Ronald Murray.

    Plaintiffs believe additional discovery and investigation will reveal Defendant(s) unlawful conduct also violates 18 U.S.C.1962 (b) and respectfully reserve the right to supplement this RICO Case Statement and amend Defendants upon the completion of discovery relating to 18 U.S.C.1962 (b).

    There is an issue of a transport business that opened on or about April 21, 2011 in Dallas, Texas, that requires "reasonable inquiry".  A United States Department of Transportation license # 2145514 was issued to a Keenan Kirby for this Texas transport business that started on 4/21/11.  The trucking company advertises it transports "Paper Products."  Dallas, Texas resident, Defendant Keenan Kirby, Assistant Vice President of FANNIE MAE's

business includes real property, similar to the subject real property, which is located in the state of Oklahoma.

**2. Plaintiffs allege misconduct and basis of liability of each defendant listed below as follows:**

**Mary L. Berry** -Broker/Owner individually and d/b/a **Century 21 All Pro Realty** (RICO person <u>and</u> RICO enterprise upper management):  Broker Berry is also liable for acts of broker's associates per Title 59 of Oklahoma Statues §858-363. **Associates of real estate broker—Authority.**

A. Broker Berry knowingly omitted materially significant information to the United States on the HUD-1 Settlement Statement, File number 152587, Line 804 on March 22, 2010.  The known material omission on Line 804 was the $350.00 appraisal fee to Red Rock Mortgage.  This omission subsequently deceived the United States government and other interstate financial institutions.  Broker Berry with the enterprise was able to hide the mortgage originated with known insufficient collateral on the subject real property by omitting the appraisal information.  Broker Berry received the full 1/4/10 FHA Appraisal - HK533OKC on 2/4/10.  Plaintiffs' Realtor, K. Grewell, faxed the appraisal to Broker Berry at the Century 21 All Pro Realty office.   The appraisal stated property value at $109,000.00. The $350.00 cost for the appraisal was paid by Plaintiff Gary Morris by personal check mailed from his residence in Dallas, Texas to Broker Berry's Century 21 All Pro Realty office in Oklahoma in December 2009. Plaintiffs allege Mary Berry, individually and d/b/a Century 21 All Pro Realty violated **18 U.S.C. 1001; 18 U.S.C. 1010; and 18 U.S.C. 1344.**

B. The $109,000.00 appraisal value provides full disclosure that the $115,200.00 sales price used as the value basis for the loan funded by wire [HUD-1 Settlement Statement, Line 812.] on 3/22/10 was in excess of the represented 97% loan-to-value mortgage originated for $111,744.00.

C. That $109,000.00 FHA appraisal was also hidden because combined with the Plaintiff(s) $109,000.00 purchase counter offer on 2/4/10; solid documentation would exist of the willful over-valuation of the subject property by the involved Defendants. Broker Berry facilitated the refusal of the Plaintiff(s) $109,000.00 purchase counter offer on 2/5/10. A counter offer from FANNIE MAE above the known appraised value facilitated by Broker Berry was faxed from the Century 21 All Pro Realty office to Plaintiffs' Realtor K. Grewell on the afternoon of 2/5/10 before any other Buyer offers were presented.

D. Broker Mary Berry on March 22, 2010 had knowledge of, participated and allowed the wire funding and origination of the FANNIE MAE loan over the 1/4/10 appraised value. Broker Berry did not intervene with the loan funding on 3/22/10. Broker Berry had possession of the fully documented appraisal for the property in February 2010. The HUD-1 Settlement Statement dated 3/22/10, Line 812 reports a wire fee to Red Rock Mortgage for $100.00 for the loan funding.

E. Broker Mary Berry's Century 21 All Pro Realty Office in Oklahoma City, Oklahoma, accepted U.S. Mail service for an envelope mailed by Plaintiff Gary Morris in Dallas, Texas, on December 22, 2009. The envelope [U.S. Postal Service Delivery Confirmation # 9405 5036 9930 0092 6978 42] from Gary

Morris addressed to Defendant Laretta Murray contained a personal check payable to Allstate Exterminating Service for $115.00 (HUD-1 Settlement Statement dated 3/22/10, Line 1303.)  The check was payment for completion of the property pest inspection that was performed on December 23, 2009. Plaintiff(s) allege Broker Berry's use of mail services in the furtherance in the unlawful operation of the enterprise is a violation of **18 U.S.C.1341**.

F. Broker Berry participated in the willful forcing of Plaintiffs out of being able to use their pre-approved lower interest rate FHA loan during the period between 2/4/10 - 2/10/10.  Broker Berry participated in a series of schemes, facilitated counter offers and utilized Buyer's 12/12/09 fiduciary information obtained from the 12/16/09 purchase transaction to financially maneuver the Plaintiff(s) out of their pre-approved FHA loan.  The higher rate FANNIE MAE loan which was 1.3% higher interest equates to $133.00 per month additional payment.  This $133.00 per month additional payment totals $47,880.00 at the end of the current 30 year mortgage contract.  Allege violation(s): **18 U.S.C 1012; 18 U.S.C. 1010; and 59 O.S.§858-312(2), Rule 605:10-17-5(1).**

G. Broker Berry, submitted a 12/22/09 requested counter offer for Seller/FANNIE MAE to pay Buyer's allowable closing cost <u>on or after</u> 1/11/10.  Plaintiff(s) requested the closing cost counter offer during a speaker telephone conversation on 12/22/09 between Candice Morris and Broker Berry. Laretta Murray was present in Broker Berry's office during that conversation.  Plaintiffs suffered almost $5,000.00 of financial damage due to the untimely submission of the 12/22/09 Counter Offer request for Seller paid closing cost.

H. The purchase contract was fully executed on 12/23/09 by FANNIE MAE
   <u>without</u> submission of the Buyer's verbal counter offer for FANNIE MAE to pay
   allowable closing cost.    Plaintiffs were denied a typical Buyer benefit noted in
   the January 4, 2010 FHA Appraisal- HK533OKC (FANNIE MAE Form 1004MC
   –March 2009, Page 1).    The appraisal stated that "Typically closing cost of 1-
   3% of sales price" in that present market period.    Mary Berry, individually and
   d/b/a Century 21 All Pro Realty violated:    **59 O.S.§858-353.(A)(1)(2)(a)(b)(c).**

I. Plaintiffs allege U.S. mail service was used in Broker Berry's Century 21 All Pro
   Realty Office on or about January 18, 2010 to return Plaintiffs $1,000.00
   earnest money deposit submitted on December 16, 2009 to Century 21 All Pro
   Realty.    A check from Century 21 All Pro Realty for $1,000.00 was mailed to
   Plaintiff Gary Morris in Dallas, Texas.    Mary Berry, individually and d/b/a
   Century 21 All Pro Realty violated: **18 U.S.C. 1341**- Mail Fraud.

J. Broker Berry, individually and d/b/a Century 21 All Pro Realty acted
   intentionally or recklessly on February 8, 2010, in awarding the purchase
   contract for the subject property to another Buyer with the lower net bid at the
   conclusion of a "highest and best" bidding period between Plaintiff Gary Morris
   and an unknown Buyer. This scheme will be hereafter called the "Possibly
   made a Mistake" scheme, one of many schemes the enterprise uses to willfully
   overvalue property.

K. The intentional or reckless actions in awarding the purchase contract to a lower
   bidder resulted in immediate and long term financial damage in excess of
   $60,000.00 to Plaintiffs. Due to the willful over valuing, Plaintiffs were unable

to use their pre-approved FHA financing.  The 30 year FHA financing had a fixed lower interest rate for Plaintiffs. Mary Berry, individually and d/b/a Century 21 All Pro Realty violated **18 U.S.C. 1012** –HUD Transactions.

L.  Broker Berry made a sworn statement to Federal HUD Investigator, Eduardo Garza, Jr., on or about June 29, 2010 that <u>all</u> Century 21 All Pro Buyers are basically given the same treatment as Plaintiffs Morris.

M.  Broker Berry submitted a known material statement concerning Gary Morris's FHA financing that was cited in the June 29, 2010 final investigative report conclusions for investigations HUD No.:06-10-0424-8 and OHRC No.: 2010-3 by HUD Investigator Garza. Broker Berry claimed on 12/23/09 that Gary Morris "*changed* their lender from a conventional lender to a FHA…".  Broker Berry was given a Mortgage Loan Commitment letter stating a LTV (Loan-To-Value) of 96.500% on 12/16/09 with the Plaintiffs initial written offer to purchase the subject property.  The pre-approved FHA loan letter for Plaintiff Gary Morris from Red Rock Mortgage was dated 12/15/09 and is solid evidence of Plaintiffs initial intention to use an FHA loan.  The loan commitment letter was required with the Purchase Offer on the subject FANNIE MAE owned property.  Broker Berry's sworn statement to the HUD government official saying, Plaintiffs Morris "*changed* their lender from a conventional lender to a FHA", was false since Broker Berry was in possession of the pre-approved FHA loan letter concurrent with the 12/16/09 purchase offer.  That false statement with others influenced the outcome of a government investigation.  That statement by Broker Berry also masked willful participation in the scheme maneuvering

Plaintiffs to use the higher interest rate FANNIE MAE loan.  A materially false statement knowing it to be untrue to a government official is in violation of Statements generally [**18 U.S.C. 1001**].

N.  The RICO enterprise operates with the intention that FANNIE MAE Buyers will use a FANNIE MAE loan.  The higher interest rate FANNIE MAE loan was <u>never</u> the initial intention of Plaintiff(s) Morris for financing the FANNIE MAE owned property.

O.  Broker Mary Berry's participation in the alleged multiple offer "possibly made a mistake" scheme on or about the period during 2/5/10 – 2/10/10, caused Plaintiffs Morris extreme emotional distress when informed they lost the house they thought would be their new Oklahoma home.

P.  Broker Mary Berry had authority to simply correct their "possibly made a mistake" error and mitigate damages by awarding the purchase contract to Buyer Morris with the first "highest and best" offer.  Defendant Berry instead participated in using this scheme to willfully overvalue the subject property above the known 1/4/10 FHA appraisal price of $109,000.00.  This willful overvaluing was then used to influence Red Rock Mortgage, and other interstate financial institutions, to participate in an insufficient collateral loan for $111,744.00, that funded by wire on 3/22/10. Allege violation(s):**18 U.S.C. 1344; 18 U.S.C. 1343; 59 O.S.§858-312(8), Rule 605:10-17-4(12), Rule 605:10-17-5(1)**.

Q.  Broker Berry denied Plaintiffs benefit of the advertised 3.5% buyer incentive. The marketing flyer read: *New Closing Cost Assistance and Appliance Incentive "FANNIE MAE is offering a 3.5% incentive for buyers who purchase*

and close on a FANNIE MAE-owned home between January 28 and April 30, 2010." "To be eligible for this incentive: i) Offers must be accepted on or after January 28, 2010" - <u>Plaintiffs offer was accepted in February 2010</u>  ii) "Property sale must close before May 1, 2010"  - <u>Plaintiffs sale closed on March 22, 2010.</u>  iii) "Buyers must be owner-occupants, investors are excluded" – <u>Plaintiffs are owner-occupants.</u> Other than to check for Lender limitations, no other restrictions were published.  Plaintiff(s) clearly complied with all the requirements to obtain this 3.5% buyer incentive and requested the same.

R. Broker Berry's sworn statement to HUD Investigator Garza Jr. that was cited in the HUD Determinations report signed June 30, 2010, in the second paragraph up from Section IV. FINDINGS AND CONCUSIONS claimed the advertised and stated "buyer incentive" to be a "negotiable item".  By Broker Berry's admission of "negotiable item", she knowingly advertised a "buyer incentive" with false pretenses.  Allege Oklahoma Consumer Protection and Real Estate Commission violation(s): **59 O.S.§858-312(2)(8), Rule 605:10-17-4(12) and 15 O.S. §753(8)(20) as defined  in: 15 O.S. §752(9)(13)**.

S. Plaintiffs suffered financial damages in excess of $60,000.00 within a 30 day period to purchase the same 2 bedroom, "as-is" foreclosed home as a result of Mary Berry's participation in the RICO enterprise operations.


**<u>Genny Ulrey</u>** - FANNIE MAE designated Signor and Oklahoma REO Closing and Title Services, LLC employee (RICO person <u>and</u> RICO enterprise upper management) –

The alleged unlawful acts by the FANNIE MAE designated signer and Title Officer were committed in the course of her employment as a Title Officer and within the scope of her

authority under FANNIE MAE.  FANNIE MAE also benefited from this officer's offensive

conduct by increased revenue of the property sales price and mortgage interest.

    A.  Defendant Ulrey intentionally omitted the $350.00 cost of an appraisal on Line

        804 of the HUD-1 Settlement Statement dated 3/22/10.  This material omission

        on Line 804 misled the United States government and other interstate financial

        institutions.  A full copy of the 1/4/10 dated FHA appraisal was submitted to

        FANNIE MAE on 2/4/10, with the Buyer's new counter offer at the appraisal

        price.

    B.  Defendant Ulrey and other Oklahoma REO Closing and Title Services

        employees had possession and knowledge of the 1/4/10 FHA appraisal

        (HK533OKC) from the 12/16/09 initial purchase transaction cancelled by

        Plaintiffs on or about January 18, 2010 for the subject property.  The material

        omission on the HUD-1 Settlement Statement hid the $109,000.00 value of the

        property mortgaged for $111,744.00.  Allege violation **18 U.S.C 1001** and **18**

        **U.S.C 1010.**

    C.  Defendant Ulrey signed the HUD-1 Settlement Statement on behalf of the

        Federal National Mortgage Corporation (FANNIE MAE) on the last page,

        swearing the HUD-1 Settlement Statement to be complete and correct.

        Defendant Ulrey had full knowledge of the appraisal on or before 3/22/10 when

        the incomplete document was signed and submitted.  Defendant Ulrey knew or

        should have known the material omission of the appraisal would defraud the

        U.S. government and other interstate financial institutions as subsequent

        funding and servicing of this over valued FANNIE MAE mortgage took place.

D. Defendant Ulrey used a wire transfer (see Line #812 on final HUD-1 Settlement Statement - File #15258) dated March 22, 2010 to complete loan funding on the subject property. Defendant Ulrey had knowledge of the falsely represented 97% loan-to-value mortgage prior to the wire transfer and funding. Plaintiffs allege violation of wire fraud in conducting unlawful acts of the enterprise. [**18 U.S.C.1343**].

E. Utilized U.S. mail service to further operations of the enterprise when Oklahoma County recorded title documents showing legal ownership transfer were mailed to Plaintiffs at subject property after March 22, 2010 closing. Allege violation of **18 U.S.C.1341**.

**Keenan Kirby** - FANNIE MAE Assistant Vice-President (RICO person <u>and</u> RICO enterprise upper management) –

The alleged unlawful acts by FANNIE MAE employee/corporate officer Keenan Kirby were committed in the course of his employment and within the scope of his employee authority under FANNIE MAE. FANNIE MAE also benefited from this officer's offensive conduct by increased revenue of the property sales price and mortgage interest.

**A.** Willfully overvalued the subject property for the purpose of influencing the interstate lending institutions of Red Rock Mortgage and Flagstar Bank. A thirty year FANNIE MAE mortgage loan was originated and then transferred to another lending institution on a property appraised at less value than the falsely represented 97% loan-to-value mortgage balance of $111,744.00. [**18 U.S.C 1014 –Loan and credit** applications].

B. Use of wire transfer (see Line #812 on final HUD-1 Settlement Statement - File #15258) dated March 22, 2010 to complete loan funding on subject property

with knowledge of falsely represented 97% loan-to-value mortgage.  Plaintiffs

allege violation of wire fraud in conducting unlawful acts of the enterprise. [**18**

**U.S.C.1343**].

C. Utilized U.S. mail service to further operations of the enterprise and to transport

marketing flyers.  The specific multi-color marketing flyers advertising a 3.5%

FANNIE MAE *New Closing Cost Assistance and Appliance Incentive* effective

during the period of 1/28/10-4/30/10 to Buyers of FANNIE MAE-owned

properties.

D. The advertised Buyer incentive was later sworn to be a "negotiable item" in a

HUD investigation report.  The incentive was not honored after compliance with

all the terms listed on the marketing flyer.  There was no language included on

the flyer that indicated any further requirements other than those stated on the

flyer. Plaintiffs allege this marketing flyer was used as a fraudulently promised

incentive to induce Buyers to purchase FANNIE MAE property.  This was

alleged false advertisement in violation of Oklahoma Consumer Protection

Laws **15 O.S. 751 and 752(13)** and the interstate transporting of the flyers is an

alleged violation of **18 U.S.C. 1341**.

E. Defendant rejected Plaintiff's purchase offer of previous contracted price of

$107,000.00 on or about 2/3/10.

F. A full copy of the 1/4/10 dated FHA appraisal HK533OKC was submitted on

2/4/10, with the Buyer's new counter offer at the appraisal price of

$109,000.00.  Plaintiff/Buyer offered to satisfy all FHA lender requirements at

Buyer's expense and requested 3.5% advertised FANNIE MAE Buyer

incentive. That counter offer was rejected by Keenan Kirby on 2/5/10 **before** there were **any other Buyer offers**.

G. Plaintiffs allege Keenan Kirby violated Bank Fraud [**18 U.S.C.1344**] when he knowingly executed a scheme to have the financial institution of Red Rock Mortgage fund an insufficient collateral mortgage (FANNIE MAE loan #1002144) on March 22, 2010 for the subject property.

H. Keenan Kirby authorized Red Rock Mortgage to fund the known falsely valued, March 22, 2010 FANNIE MAE loan by wire, as indicated by the wire fee payment on the HUD-1 Closing Statement. Violates: **18 U.S.C. 1343**.

I. Keenan Kirby knowingly influenced the interstate financial institutions of Red Rock Mortgage and Flagstar Bank on 3/22/10 by representing a FANNIE MAE 97% loan-to-value mortgage (Contract Sales Price: $115,200.00 with 97% value loan of $111,744.00) for funding. Keenan Kirby had full knowledge and was in possession of the 1/4/10 dated appraisal (HUD-FHA HK533OKC) stating value at $109,000.00, well under the $115,200.00 sales price that was instead used as the basis of value for the loan. Violates: **18 U.S.C. 1014**.

J. Keenan Kirby knowingly participated in originating an **over** 100% loan-to-value mortgage on March 22, 2010 while representing the new FANNIE MAE mortgage (Loan #1002144) to be 97% loan-to-value.   This March 22, 2010 FANNIE MAE loan impacted the U.S. Department of Treasury and the current FANNIE MAE conservator, Federal Housing Finance Agency.  The U.S. Treasury currently guarantees the funding for FANNIE MAE while under U.S.

conservatorship of the Federal Housing Finance Agency.  Violates: **18
U.S.C.1344** and **18 U.S.C. 1001**.

K.  Keenan Kirby approved the 3/22/10 HUD-1 Settlement Statement, File #15258
with the material omission of the $350.00 dollar amount on Line 804 for the
known FHA appraisal (HK533OKC).   Violates: **18 U.S.C. 1012 and 18 U.S.C.
1010.**

L.  Plaintiffs suffered extreme emotional distress from all the schemes of the
enterprise; as well as, weeks of Keenan Kirby's delay in signing the final
purchase contract from 2/10/10 until 3/5/10.  The delayed executed contract
and subsequent delayed closing caused Plaintiff Gary Morris to live in various
Oklahoma City hotels.  Gary Morris was in training for his new job in a new
state after almost eighteen months of unemployment in Texas.  Plaintiff
Candice Morris could not join her husband, Gary Morris, in Oklahoma City
without a residence to maintain their large pets.

M.  Plaintiffs suffered financial damages in excess of $60,000.00 within a 30 day
period to purchase the same 2 bedroom, "as-is" foreclosed home as a result of
Keenan Kirby's participation in the RICO enterprise operations.

**Federal National Mortgage Association d/b/a FANNIE MAE** –
Plaintiffs allege FANNIE MAE, is liable under the theory of respondeat superior for

negligent and intentional acts of FANNIE MAE agents, Genny Ulrey and Oklahoma REO

Closing & Title Services, LLC.

FANNIE MAE was indifferent to the Plaintiffs' letters and calls to two FANNIE MAE

corporate officers and numerous calls to the FANNIE MAE Hotline requesting

intervention in an irregular sales transaction.  Written notification by the Plaintiffs

heightened the sense of wrong doing in the transactions with the subject property located at 1805 NE 67th Street; Oklahoma City, Oklahoma, but FANNIE MAE failed to take corrective actions. **Model Penal Code Section 2.02(7)**

A. FANNIE MAE should not skirt corporate liability by using its FANNIE MAE Hotline. The Hotline gives the appearance of FANNIE MAE trying to mitigate damages by allowing a means for customers to report problems. FANNIE MAE took no actions to mitigate damages or intervene in the sale of the subject property after numerous calls and letters.

B. 1/25/10 at 11:06 AM - An email from Plaintiffs to: headquarters@fanniemae.com and Kenneth_Bacon@FannieMae.com Subject: Fair Housing Complaint -Fannie Mae REO

C. 4/8/11 at 12:16 AM – An email from Plaintiffs to fraud_tips@fanniemae.com with a specific request to deliver the attached April 7, 2011 letter to –Nancy Jardini, Senior Vice President and Chief Compliance and Ethics Officer.

D. FANNIE MAE, may be vicariously liable through its representative agents: Genny Ulrey and Oklahoma REO Closing & Title Services, LLC. The representative(s) signed for certification and submitted an incomplete HUD-1 Settlement Statement, File number 152587 to the U.S. government on 3/22/10. Line 804 value of $350.00 of the HUD-1 settlement statement was a material omission. The omission hid the existence of the FHA Appraisal (HK533OKC) with a value far less then the FANNIE MAE mortgage loan that was funded on March 22, 2010.

E. The FANNIE MAE representative agents: Genny Ulrey and Oklahoma REO
Closing & Title Services, LLC used wire transmissions to fund the FANNIE
MAE mortgage on March 22, 2010, evidenced by HUD-1 Settlement
Statement, Line 812 wire fee of $100.00 to Red Rock Mortgage & Lending.
Allege violation of **18 U.S.C.1343** – Wire fraud.

**Jennifer Wiewel** –Century 21 All Pro REO Sales Coordinator (RICO person <u>and</u> RICO
enterprise middle management) –

The alleged unlawful acts by real estate agent/employee Jennifer Wiewel were
committed in the course of her association/employment and within the scope of her real
estate agent/employee authority under the brokerage of Century 21 All Pro Realty:

A. Wiewel knowingly made a material omission to the United States on the
HUD-1 Settlement Statement, File number 152587, by omitting the $350.00
cost of the 1/4/10 FHA appraisal. This material omission was done
intentionally. The United States and other interstate financial institutions
were influenced on March 22, 2010 with misrepresentation of a FANNIE
MAE 97% loan-to-value mortgage that was in fact over 100% loan-to-value.
Wiewel and the enterprise originated a mortgage with known insufficient
collateral – the subject real property. Wiewel reviewed documents with the
known misrepresented mortgage and did not intervene to correct the
documents nor did she report known illegal activity to authorities. Plaintiffs
allege Jennifer Wiewel violated **18 U.S.C. 1001; 18 U.S.C. 1010; and 18
U.S.C. 1344.**

B.  Jennifer Wiewel on 2/4/10 had knowledge and possession of the 1/4/10
FHA Appraisal - HK533OKC which stated property value at $109,000.00
when it was faxed with the Plaintiff(s) purchase counter offer by Plaintiff(s)
Realtor Grewell to FANNIE MAE and Century 21 All Pro Realty.  The
$350.00 cost for the appraisal was paid by Plaintiff Gary Morris.

C.  Jennifer Wiewel faxed a refusal to the Plaintiff(s) $109,000.00 purchase
counter offer on the afternoon of 2/5/10 to Plaintiff(s) realtor Grewell, before
any other offers were presented on the subject property [allege violation of
**18 U.S.C.1343** – Wire Fraud].

D.  Jennifer Wiewel participated in willful maneuvering of Plaintiffs out of being
able to use their pre-approved lower interest rate FHA loan during the
period between 2/4/10 - 2/10/10.  Wiewel coordinated and influenced the
results of counter offers on the subject property with infliction of her
personal comments accompanying the faxed and emailed counters.
Wiewel used the Plaintiffs fiduciary information from the 12/16/09 purchase
transaction and manipulated the counter offers so that the sales price,
down payment and closing cost terms were financially impossible for the
Plaintiffs to use their pre-approved lower interest rate FHA loan. Wiewel's
actions with the counter offers subsequently maneuvered Plaintiffs to use
the next best financing option, a FANNIE MAE loan with higher interest.

E.  Wiewel caused the Plaintiffs to pay an additional $47,880.00 of loan
payments for the same property with her participation in the unlawful RICO
schemes.  This portion of the Plaintiffs' damages was the result of the 1.3%

higher FANNIE MAE interest rate loan the Plaintiffs were maneuvered to using.  The Plaintiffs now pay $133.00 per month of additional mortgage payment for the 30 year contract of the mortgage.  Allege violation(s): **18 U.S.C 1012; 18 U.S.C. 1010; and 59 O.S.§858-312(2), Rule 605:10-17-5(1).**

F.   Jennifer Wiewel, acted intentionally or recklessly on February 8, 2010, in awarding the purchase contract to another Buyer with the lower net bid at the conclusion of a "highest and best" bidding period between Plaintiff Gary Morris and unknown Buyer.  This scheme, where Jennifer Wiewel admits she "possibly made a mistake", was used to willfully overvalue property.

G.   The intentional or reckless actions in awarding the purchase contract to the lower bidder resulted in immediate and long term financial and emotional damage to the Plaintiffs due to the willful over-valuing.  The Plaintiffs pre-approved 30 year FHA financing had a lower fixed interest rate.  `Jennifer Wiewel's participation in the alleged multiple offer "possibly made a mistake" scheme on or about the period during 2/5/10 – 2/10/10, caused Plaintiffs Morris extreme emotional distress when informed they lost the house they thought would be their new Oklahoma home and then days later learned they had to pay almost $60,000 more for the same 1935 built, two bedroom foreclosure home they loved.  Jennifer Wiewel was aware from the Plaintiffs 12/16/09 contract that the Plaintiff(s) were only relocating and purchasing a home in Oklahoma because Gary Morris had just secured a job after 18 months of unemployment in Texas.  With Ms. Wiewel's unlawful enterprise participation, the Plaintiffs were unable to use

their pre-approved FHA financing **and** the 1935 year built, two bedroom subject property for which the Plaintiff(s) had a $107,000.00 purchase contract until January 2010, was now contracted at $115,200.00 in February 2010 without benefit of a 3.5% advertised Buyer incentive or any seller paid concessions.

H.  Jennifer Wiewel had to simply correct her "possibly made a mistake" error and mitigate damages.  Jennifer Wiewel instead participated in using this scheme to willfully overvalue the subject property above the known 1/4/10 FHA appraisal price of $109,000.00.  This willful overvaluing was then used to influence Red Rock Mortgage, a financial institution, to participate in an insufficient collateral loan.  Allege violation(s):**18 U.S.C. 1344;18 U.S.C. 1343; 59 O.S.§858-312(8), Rule 605:10-17-4(12), Rule 605:10-17-5(1).**

I.  Jennifer Wiewel denied Plaintiffs benefit of the advertised 3.5% buyer incentive by failing to produce goods as advertised.  The marketing flyer read: _New Closing Cost Assistance and Appliance Incentive "FANNIE MAE is offering a 3.5% incentive for buyers who purchase and close on a FANNIE MAE-owned home between January 28 and April 30, 2010." "To be eligible for this incentive: i) Offers must be accepted on or after January 28, 2010" -_ Plaintiffs offer was accepted in February 2010 _ii) "Property sale must close before May 1, 2010"  -_ Plaintiffs sale closed on March 22, 2010. _iii) "Buyers must be owner-occupants, investors are excluded" –_ Plaintiffs are owner-occupants. Other than to check for Lender limitations, no other restrictions were published.

J.  Jennifer Wiewel made a sworn statement to HUD Investigator Garza Jr. in
the HUD Determinations report signed June 30, 2010, in the second
paragraph up from Section IV. FINDINGS AND CONCUSIONS, Wiewel
claimed the advertised and stated "buyer incentive" to be a "negotiable
item". By Wiewel's admission of "negotiable item", she knowingly
participated in advertising a "buyer incentive" with false pretenses. Allege
violation(s): **59 O.S.§858-312(2)(8), Rule 605:10-17-4(12) and 15 O.S.
§753(8)(20) as defined  in: 15 O.S. §752(9)(13**).


**Ronald Murray** Century 21 All Pro Real Estate Agent (RICO Person) –
The alleged unlawful acts by real estate agent Ronald Murray were committed in the
course of his association/employment and within the scope of his real estate agent
authority under the brokerage of Century 21 All Pro Realty:

A.  Ronald Murray was obligated to work solely for the seller's/FANNIE MAE's
best interest in a Single-Party Broker contract.  Ronald Murray failed to
disclose his contractual obligation to FANNIE MAE at any time between
meeting Plaintiffs on 12/12/09 and before driving the Plaintiffs to his
Century 21 All Pro Realty Office on 12/16/09 to execute the Offer to
Purchase on the subject property.  Plaintiffs Morris flew in from Dallas,
Texas to Oklahoma City, Oklahoma on 12/16/09 for the sole purpose of
executing a purchase contract on the subject property before flying back to
Dallas, Texas that same day.  Ronald Murray had pre-arranged to provide
the Plaintiffs round trip transportation from Will Rogers Airport to his realty
office.

B. Defendant Ronald Murray was present and made no attempts to neither explain the Transaction Broker form nor deny the explanation given by his wife, Defendant, real estate agent, Laretta Murray on December 16, 2009 in the Century 21 All Pro Realty conference room.  Laretta Murray represented that she and real estate husband, Ronald Murray were Realtor representatives for Plaintiff(s) Morris and other Century 21 All Pro Realty "professionals" represented FANNIE MAE/Seller, to induce Plaintiff Gary Morris to sign the form so that Realtors Murray would gain a commission.

C. Ronald Murray failed to inform himself of pertinent facts, such as market conditions and pricing, of the property.  Ronald Murray told Plaintiffs on 12/12/09 that the subject property at 1805 NE 67th Street was being sold at a great price because it had been "recently reduced" to a list price of $119,900.00.  That statement was later proven to have been negligence or incompetence since the value at $119,900 was grossly over priced with a $109,000.00 FHA appraisal on 1/4/10.

D. Ronald Murray continued to deprive Plaintiff(s) of honest services when he did not disclose another material fact that Seller/FANNIE MAE was able to pay up to 6% of Buyer's Allowable Closing Cost.  Plaintiffs allege the actions of Ronald Murray described in the immediately proceeding paragraphs A, B and this paragraph C comprised a scheme as defined in 18. U.S.C.1346 to deprive Buyers of honest services.  Allege violation(s):**18 U.S.C. 1346; 15 O.S. §753(11)(20) as defined in:15 O.S. §752(8)(13); 15 O.S.§58(1)(3)**

E.  Ronald Murray, submitted a document for SC-2011-2436 filed on 2/23/11 and sworn under oath with the District Court of Oklahoma County; stating Laretta Murray had "no involvement" in the December 2009 real estate transaction with Buyers (Plaintiffs Morris).  R. Murray submitted this statement to government officials knowing the statement to be false.  R. Murray knew several counter offers, telephone conversations, and electronic mailings for the transaction were sent directly to/from Laretta Murray from/to J. Wiewel and C. Morris.  R. Murray informed C. Morris by telephone on 12/22/09 that L. Murray was in Broker Berry's office discussing Plaintiffs Morris' transaction when C. Morris called to speak with L. Murray concerning issues with the transaction.

F.  Plaintiff(s) were told by Ronald Murray on 12/16/09 there were no sales in the neighborhood.  Plaintiffs heard from another source there had been a foreclosure property located at 1701 NE 67th Street; Oklahoma City 73111 (three houses away) with 2 acres.  Defendant Murray knew or should have known about this recent sale on the same street.  On December 19, 2009 at 9:20am, Plaintiffs sent an email to laretta.murray1@century21.com requesting Laretta & Ron to get information on that specific property address.  Ronald Murray again claimed to Plaintiffs Morris that no information was available for that property.

G.  On 12/20/09 Plaintiffs discovered through internet research the foreclosed home at 1701 NE 67th Street sold for $56,900 on 6/30/09.

H. Ronald Murray accepted U.S. Mail service at the Century 21 All Pro Realty Office in Oklahoma for an envelope mailed by Plaintiff Gary Morris in Dallas, Texas, on December 22, 2009.  The envelope [U.S. Postal Service Delivery Confirmation # 9405 5036 9930 0092 6978 42] from Gary Morris addressed to Defendant Laretta Murray contained a personal check payable to Allstate Exterminating Service for $115.00 (HUD-1 Settlement Statement dated 3/22/10, Line 1303.)

I. Plaintiff Morris' $115.00 personal check was delivered to an Allstate Exterminating Service by Defendants Murray. The check was payment for completion of the property pest inspection on 12/23/09.  Plaintiff(s) allege Ronald Murray's use of mail services in the furtherance in the unlawful operation of the enterprise is a violation of **18 U.S.C. 1341** .

J. Plaintiffs allege U.S. mail service was used by Ronald Murray in the Century 21 All Pro Realty Office on or about January 18, 2010 to return Plaintiffs $1,000.00 earnest money deposit.  A check from Century 21 All Pro Realty for $1,000.00 was mailed to Plaintiff Gary Morris in Dallas, Texas.  Ronald Murray utilized U.S. mail service to facilitate the operations of the enterprise. [**18 U.S.C. 1341**].

K. Ronald Murray submitted a known materially false statement concerning Gary Morris's FHA financing that was cited in the June 29, 2010 final investigative report by HUD Investigator Garza, Jr.  Ronald Murray claimed that on 12/23/09 Gary Morris *changed* their lender from a conventional lender to a FHA…"  Plaintiff Gary Morris submitted a Mortgage Loan

Commitment letter for an FHA loan dated 12/15/09 from Red Rock Mortgage to Ronald Murray with the 12/16/09 Purchase Offer on the subject property.

L. The 12/15/2009 Mortgage Loan Commitment letter clearly states a LTV of 96.500% which indicates an FHA loan.  Plaintiffs Morris' initial intentions for financing were with the more affordable FHA interest rate loan.  Ronald Murray completed the purchase offer with intent of the enterprise persuading Plaintiffs Morris to select the conventional FANNIE MAE financing on 12/16/09.

M. The material statement concerning Gary Morris' non-existent conventional loan was cited by HUD Investigator, Eduardo Garza, Jr. on or about June 29, 2010 in the final investigative report conclusions for investigations HUD No.:06-10-0424-8 and OHRC No.: 2010-3.   The statement was sworn under penalty of perjury by Ronald Murray.  Plaintiffs allege Ronald Murray made a materially false statement knowing it to be untrue to a government official in a HUD investigation denying Plaintiff(s) FHA loan commitment violated Statements generally [**18 U.S.C. 1001**].

N. On 12/22/09, Ronald Murray received a 15 page (included cover page) fax of the Contract Addendums to fax number 405-632-2444 from Plaintiff(s) Morris home fax machine in Dallas, Texas.  Ronald Murray utilized wire service to facilitate the operations of the enterprise. [**18 U.S.C. 1343**]

O. Plaintiffs suffered financial damages in excess of $60,000.00 within a 30 day period to purchase the same 2 bedroom, "as-is" foreclosed home as a result of Ronald Murray's participation in the RICO enterprise operations.

**Laretta Murray** Century 21 All Pro Real Estate Agent (RICO Person) -

The alleged unlawful acts by real estate agent Laretta Murray were committed in the course of her association/employment and within the scope of her real estate agent authority under the brokerage of Century 21 All Pro Realty:

A. Laretta Murray was obligated to work solely for the seller/FANNIE MAE's best interest in a Single-Party Broker contract. Laretta Murray did not disclose or offer to explain that fact to Plaintiffs at any time before or after the 12/16/09 signing of the Offer to Purchase on the subject property.

B. Laretta Murray made a fraudulent statement to induce Plaintiffs Morris into the 12/16/09 purchase contract for the subject property. Laretta gave a knowingly false explanation of the Transaction Broker agreement when asked for clarification by Plaintiff Gary Morris prior to signing the form. Laretta Murray would have benefited financially from the fraudulent inducement to enter those contracts.

C. Laretta Murray represented that she and real estate husband, Ronald Murray were Realtor representatives for Plaintiff(s) Morris and other Century 21 All Pro Realty "professionals" represented FANNIE MAE/Seller, to induce Plaintiff Gary Morris to sign a Transaction Broker form so that Realtors Murray would gain a commission. Plaintiffs allege this was a scheme as defined in 18.

U.S.C.1346 to deprive Buyers of honest services.  Allege violation(s):**18 U.S.C. 1346;15 O.S. §753(11)(20) as defined in:15 O.S. §752(8)(13); 15 O.S.§58(1)(3)**

D. Laretta Murray submitted under oath to government officials, a document for SC-2011-2436 filed on 2/23/11 with the District Court of Oklahoma County; stating she had "no involvement" in the December 2009 real estate transaction with Buyers (Plaintiffs Morris).  Laretta Murray was the main realtor contact for the Buyers Morris in negotiating the 12/16/09 purchase contract and financing. As a result of Laretta Murray's consistent involvement in the Plaintiffs' real estate purchase transaction through emailed counter offers during contract negotiations and telephone conversations; along with written and spoken statements to the Plaintiffs, they believed Laretta Murray to be their agent.

E. Laretta Murray accepted U.S. Mail service at the Century 21 All Pro Realty Office in Oklahoma 73137-9247 for an envelope mailed by Plaintiff Gary Morris in Dallas, Texas 75224-5025, on December 22, 2009.  The envelope [U.S. Postal Service Delivery Confirmation # 9405 5036 9930 0092 6978 42] from Gary Morris addressed to Laretta Murray contained a personal check payable to Red Rock Mortgage for $350.00 for the FHA Appraisal HK533OKC.  Plaintiff Morris' $350.00 personal check was delivered to Shelby Weston at Red Rock Mortgage.  Plaintiff(s) allege Laretta Murray's use of mail services in the furtherance in the unlawful operation of the enterprise is a violation of **18 U.S.C.1341**

F. Plaintiffs allege U.S. mail service was used by Laretta Murray in the Century 21 All Pro Realty Office on or about January 18, 2010 to return Plaintiffs $1,000.00

earnest money deposit.  A bank check from Century 21 All Pro Realty for $1,000.00 was mailed to Plaintiff Gary Morris in Dallas, Texas.

G.  Laretta Murray made a materially false representation under oath to Federal HUD Investigator Garza, Jr. on or about February-March 2010, concerning her attendance in Broker Mary Berry's office on December 22, 2009, during a speaker telephone conversation with Plaintiff Candice Morris and Broker Mary Berry.  Plaintiff C. Morris heard Laretta Murray speaking to Broker Berry during the speaker telephone conversation at the point where Broker Berry asked C. Morris if she (C. Morris) was accusing her agents of doing something wrong.

H.  Laretta Murray stated to HUD Investigator Garza, Jr. that she could not confirm or deny anything said by Broker Berry during that 12/22/09 speaker telephone conversation.  Plaintiffs alleged violation of [**18 U.S.C. 1001**].

I.  During the speaker telephone conversation on December 22, 2009 between Broker Berry and Plaintiff Candice Morris, Broker Berry made a threat not to sell the subject property to Plaintiffs Morris if they canceled the December 2009 contract for $107,000.00.  Plaintiff asked for a counter offer asking FANNIE MAE to pay closing cost since they had not been informed of that option previously by the Murrays'.

J.  Plaintiffs allege Laretta Murray was the female with the unique southern vocal tone (heard from Laretta Murray on many occasions) heard in Broker Berry's office when Broker Berry switched the phone to speaker during the 12/22/09 telephone conversation.

K. Plaintiffs allege Laretta Murray made the "no involvement" statements under oath in efforts to avoid being forced to tell the truth in a courtroom trial.

L. The purchase contract was fully executed on 12/23/09 by FANNIE MAE without submission of the Buyer's verbal counter offer for FANNIE MAE to pay allowable closing cost.   Plaintiffs were denied a typical Buyer benefit noted in the January 4, 2010 FHA Appraisal- HK533OKC (FANNIE MAE Form 1004MC –March 2009, Page 1).  The appraisal stated that "Typically closing cost of 1- 3% of sales price" in that present market period.  Laretta Murray, violated: **59 O.S.§858-353.(A)(1)(2)(a)(b)(c).**

M. On 12/23/09, Plaintiff(s) Morris sent a fax from their home machine in Dallas, Texas to Laretta and Ron Murray.  The fax of five pages (included cover page) of the corrected Contract Addendums to fax number 405-632-2444. Laretta Murray utilized wire service to facilitate the unlawful operations of the enterprise. [**18 U.S.C. 1343**]

N. Violated fiduciary - which was the most egregious conduct by Laretta Murray resulting in emotional distress to Plaintiffs Morris.  The intentional acts and unlawful conduct were inflicted on Plaintiffs Morris after they shared confidential personal information with Laretta Murray.  Plaintiffs trusted and believed Laretta to be their "Realtor".  Plaintiffs Morris shared with Laretta Murray: unknown at that time, FANNIE MAE single-party broker representative; that Plaintiffs were seeking a home in Oklahoma City because Gary Morris was immediately required to relocate for employment after almost eighteen months of unemployment in Texas.

O. Plaintiffs sent Laretta Murray an electronic mail prior to the December 16, 2009 contract signing with detailed personal financial information, such as amount of savings available, FICO score, annual income and lack of revolving debt balance.  Plaintiffs would never have shared that level of information with Laretta Murray or any other real estate agent had the single-party broker agreement between Century 21 All Pro Realty and FANNIE MAE been even partially disclosed.

P. Plaintiffs suffered financial damages in excess of $60,000.00 within a 30 day period to purchase the same 2 bedroom, "as-is" foreclosed home as a result of Laretta Murray's participation in the RICO enterprise operations.

2. (Continued) **Basis for liability under RICO for Defendants:**

**U.S.C. 18 §1962(c)**.

Plaintiffs allege the following RICO persons associated with and employed by the enterprise:  Keenan Kirby; Mary Berry, Broker/Owner d/b/a Century 21 All Pro Realty; Genny Ulrey; Jennifer Wiewel, Laretta Murray and Ronald Murray violated the following statues that affect interstate commerce in conducting the affairs of their enterprise:

1) 18 U.S.C. 1344 - Bank Fraud
2) 18 U.S.C. 1343 - Wire Fraud
3) 18 U.S.C. 1341 - Mail Fraud
4) 18 U.S.C. 1001 - Statements or Entries Generally
5) 18 U.S.C. 1010 - Department of Housing and Urban Development and Federal Housing Administration transactions
6) 18 U.S.C. 1012 - Department of Housing and Urban Development transactions    (intent unlawfully to defeat its purposes)

7) 18 U.S.C. 1014 - Loan and credit applications generally

Defendant(s): Mary L. Berry, individually and d/b/a Century 21 All Pro Realty; Defendant Keenan Kirby; Defendant Genny Ulrey; Defendant Jennifer Wiewel; Defendant Ronald Murray and Defendant Laretta Murray all conspired with each other to engage in a series of wrongful and illegal acts, including but not limited to, mail fraud, wire fraud, several counts of financial institution fraud, and false statements to government officials to hide their unlawful acts and intentions.

Defendants intentionally participated in this conspiracy and knowingly engaged in a pattern and practice of wrongful acts in order to originate mortgage loans with artificially inflated property values on previously foreclosed FANNIE MAE properties.

**3. Alleged wrongdoers, other than the defendants listed above and the alleged misconduct of each wrongdoer:**

At this time, Plaintiffs can not allege any other wrongdoers with certainty. Plaintiffs' reserve the right to amend this section after future opportunity granted for Discovery.  There are some other suspected wrongdoers, i.e. the designated FANNIE MAE Closing Agents in the Oklahoma City branch of Oklahoma REO Closing & Title Services, LLC.  They had knowledge of and filed the January 4, 2010 FHA appraisal and hence participated in the March 22, 2010, funding of the falsely represented 97% loan-to-value mortgage and mailed the filed Warranty Deed to Plaintiffs on April 14, 2010.

No other known wrongdoers other than the defendants named in this action at this time.  Subsequent discovery may confirm participation by others such as other real estate agents in the Century 21 All Pro Realty office and the named real estate closing officers and agency.

**4. List the alleged victims and state how each victim was allegedly injured.**

The U.S. Department of Treasury:

FANNIE MAE is under Federal Housing Finance Agency (FHFA) conservatorship. The U.S. Department of Treasury has agreed to provide capital as needed to ensure FANNIE MAE continues to provide liquidity to the housing and mortgage markets. If alleged mortgages of over-valued properties are purchased /insured by FANNIE MAE, homeowners will once again be unable to refinance their loans or sell their property at current market value. This over-valuing will once again result in a significant number of foreclosures; and hence financial instability for FANNIE MAE. The U.S. Department of Treasury will need to provide capital to stabilize another sub prime mortgage crisis.

Plaintiff(s) Gary Morris and Candice Morris:

Unable to refinance or sell the subject property appraised at $109,000 with a $111,744 mortgage balance.

Contractually obligated to pay a 1.3% higher rate interest mortgage loan than their pre-approved FHA loan for a 30 year period ($133.00 x 360 months = $47,880.00).

Were indirectly forced to pay above appraised market price with no other Buyer offer submitted ($115,200.00 - $109,000.00 = $6,200.00).

Denied benefit of current FANNIE MAE advertised buyer incentive of 3.5% of sales price for appliances or closing cost (3.5% x $115,200.00 = $4,032.00).

Denied benefit of FANNIE MAE allowable paid Buyer closing cost that Appraiser noted were typical during in that real estate market ($5,657.88)

Suffered emotional distress with alleged multiple offer, "Possibly made a mistake" scheme when informed they lost the house they thought would be their new Oklahoma home.

Suffered extreme emotional distress from the willful over-valuing process after the preceding eighteen months of unemployment. Plaintiffs only relocated from Texas to Oklahoma because of a new employment requirement.  Plaintiffs had been under contract to purchase the subject home for $107,000 in January 2010 and then indirectly forced to contract for $115,200 in February 2010 with a higher interest rate FANNIE MAE loan.  To summarize, in <u>less than 30 days</u>, the Plaintiffs suffered: 1) an immediate sales price increase of $8,200.00; 2) contract obligation of $47,880.00 of total additional interest for a FANNIE MAE loan;  3) forced to immediately pay almost $10,000.00 to correct suspected peeling lead based paint from house exterior and window panes; and denied advertised 3.5% Buyer Incentive ($4,032.00); **ALL** for the same 75 year old, two bedroom property in the midst of the most notable unstable housing market in the history of our country.

<u>Flagstar Bank</u> (an interstate financial institution): contracted to service a mortgage with insufficient collateral (an over 100% loan-to-value mortgage).  Loan = $111,744.00, Appraised value = $109,000.00, Sales Price = $115,200.00

<u>Red Rock Mortgage & Lending</u>: originated a mortgage with insufficient collateral (an over 100% loan-to-value mortgage).  Loan = $111,744.00, Appraised value = $109,000.00, Sales Price = $115,200.00

<u>FANNIE MAE Stockholders:</u> insuring/purchasing mortgage with insufficient collateral (an over 100% loan-to-value mortgage).  Mortgage/Loan = $111,744.00, Appraised value = $109,000.00, Sales Price = $115,200.00.

<u>U.S. Taxpayers:</u> pay the ultimate financial burden from failure of major financial institutions while under the conservatorship of the federal government.  The U.S. Taxpayers also suffer financial consequences when there are an increased number of neighborhood foreclosures.  Property owners of over-valued mortgages result in a high rate of mortgage default and subsequent foreclosures.

<u>Future Unsuspecting Home Buyers:</u> purchasing FANNIE MAE-owned properties without a certified appraisal are subject to purchasing over-valued properties.  Unsuspecting Home Buyers are potential victims when directly calling the contracted realty firms exclusively representing FANNIE MAE.  Home buyers relocating from out of state are at highest risk of becoming victims of the enterprise because they are clearly unaware of the real estate practices concerning Single-Party Broker and Transaction Broker in Oklahoma and other states that allow this form of equally compensated, one sided broker representation in a real estate purchase transaction.  The home buyers unknowingly purchase those FANNIE MAE properties over priced while deprived the benefit of honest services.  These buyers contract to purchase FANNIE MAE property without understanding they are without realtor representation on their behalf, then persuaded into using the no cost property appraisal option to lure them into a FANNIE MAE loan.  FANNIE MAE has the exclusive option of no appraisal required in a new mortgage.

<u>Previous Buyers of FANNIE MAE foreclosures who were represented by Century 21 All Pro Realty:</u> Sworn statement by Broker Mary Berry to HUD investigator Garza, Jr. cited

in the June 2010 report, claimed Plaintiffs Morris did not receive discriminatory treatment

by Century 21 All Pro Realty and it Broker and Associates.  The sworn statement further

claimed Plaintiffs Morris were **treated like all other Buyers represented by the realty**

**firm**.  This would imply other Buyers were treated and deceived in the same manner as

Plaintiffs Morris.  Opportunity for Discovery of closed real estate transactions of FANNIE

MAE owned properties listed with Century 21 All Pro Realty where the Buyers had

Transaction Broker representation by Century 21 All Pro Realty are believed to reveal

additional mortgages with inadequate collateral and hence additional victims of the

enterprise.

### 5. Details of pattern of racketeering activity

**18 U.S.C.** 1962(a), **18 U.S.C.** 1962(c), **18 U.S.C.** 1962(d):

**5.(a)**  The alleged predicate acts of Financial Institution/Bank Fraud [18 U.S.C. 1344];
Mail Fraud [18 U.S.C. 1341]; Wire Fraud [18 U.S.C. 1343] and Loan and credit
applications generally [18 U.S.C. 1014] comprise the "pattern of racketeering" used in the
operation of the enterprise.

**5.(b)**   1. Financial Institution/Bank Fraud [18 U.S.C. 1344]:

March 22, 2010 – Keenan Kirby, FANNIE MAE Assistant Vice President; Mary

Berry, Broker/Owner d/b/a Century 21 All Pro Realty; Genny Ulrey of Oklahoma

REO Closing & Title Services, LLC; and Jennifer Wiewel procured funding on an

insufficient collateral FANNIE MAE mortgage loan.  The $111,744.00 FANNIE

MAE loan that funded on 3/22/10 was fraudulently represented to the U.S.

government on a HUD-1 Settlement Statement as a 97% loan-to-value mortgage.

The Defendants knew and failed to disclose the subject property securing the

$115,000.00 sales price on the FANNIE MAE mortgage that funded by bank wire

on 3/22/10 was appraised on 1/4/10 by a certified government appraiser to be worth $109,000.00.

**2.** <u>Mail Fraud</u> [18 U.S.C. 1341]:

    **i)**    On or about 1/18/10 – <u>From</u>: Laretta Murray, Ronald Murray, Mary Berry, d/b/a Century 21 All Pro Realty mailed Century 21 All Pro Realty check for $1,000.00 Earnest Money after cancellation of purchase contract. / <u>TO:</u> Plaintiffs home in Dallas, Texas.

On or about 12/23/09 – <u>From</u>: Gary Morris mailed signed contract addendums and check to pay for FHA appraisal fee / <u>TO:</u> Laretta Murray and Ronald Murray in the Century 21 All Pro Realty Office in Oklahoma.

    **ii)**    4/14/10 – <u>From</u>: Amber N. Flanigan of Oklahoma REO Closing & Title Services, LLC mailed Original Warranty Deed / <u>TO:</u> Plaintiffs home at 1805 NE 67th Street; Oklahoma City, Oklahoma

    **iii)**    6/24/10 – <u>From</u>: Zelinda Hyde of Oklahoma REO Closing & Title Services, LLC mailed Owner's Policy No. 5016540-3754 from Tulsa, Oklahoma / <u>TO:</u> Plaintiffs home at 1805 NE 67th Street; Oklahoma City, Oklahoma

**3.** <u>Wire Fraud</u> [18 U.S.C. 1343]:

    **i)**    On or about 12/22/09 – Gary Morris faxed 14 pages of signed contract addendums from Dallas, Texas / <u>TO:</u> Laretta or Ronald Murray 405-632-2444 at 2:47am.

    **ii)**    12/23/09 – Gary Morris faxed 3 pages of signed contract addendums from Dallas, Texas / <u>TO:</u> Laretta or Ronald Murray 405-632-2444 at 1:23am.

iii)   1/19/10 – Gary Morris faxed 3 pages and cover sheet from Dallas, Texas / <u>TO</u>: Ronald Murray 405-632-2444.

iv)   1/20/10 – Gary Morris faxed 1 pages and cover sheet from Dallas, Texas / <u>TO</u>: Ronald Murray 405-632-2444 at 10:38pm.

v)   2/2/10 – Plaintiffs Realtor Kristyn Grewell faxed Plaintiff's initial Purchase Offer / <u>TO</u>: Mary Berry/Broker Century 21 All Pro Realty at 405-632-4623.

vi)   2/5/10 – Mary Berry/Broker Century 21 All Pro Realty and Jennifer Wiewel from 405-632-4623 faxed FANNIE MAE Multiple Offers Notification at 4:08pm / <u>TO</u>: Plaintiff(s) Realtor Kristyn Grewell 405-359-7499.

vii)   On 2/8/10 - Plaintiff(s) Realtor Kristyn Grewell 405-359-7499 faxed Multiple Offer Response / <u>TO</u>: Jennifer Wiewel 405-632-4623.

4.   <u>Loan and credit applications generally</u> [18 U.S.C. 1014]:

i)   2/4/10 - Keenan Kirby, Mary Berry, Broker/Owner d/b/a Century 21 All Pro Realty; and Jennifer Wiewel worked together to submit a Counter Offer to Plaintiffs above the known 1/4/10 appraisal value of $109,000.00 with no other offers submitted.  Allege willful overvaluing a property to influence the Federal Housing Authority.

ii)   2/5/10 through 2/10/10 - Keenan Kirby, Mary Berry, Broker/Owner d/b/a Century 21 All Pro Realty; and Jennifer Wiewel worked together to willfully overvalue the subject property to influence the Federal Housing Authority and the Federal Housing Finance Agency (FHFA) by using a series of "highest and best" bid periods between two competing Buyers.

**(a)/(b)** Plaintiffs allege violation of the following statues that affect interstate commerce in conducting the affairs of their enterprise with the date of the predicate act:

1)  18 U.S.C. 1344 - Bank Fraud / (Willful over-valuing using counter offers on 2/3/10, 2/4/10, 2/5/10 and 2/8/10 with possession of 1/4/10 FHA appraisal )
2)  18 U.S.C. 1343 - Wire Fraud / (Bank wire for funding 3/22/10; faxes: 12/22/09, 12/23/09, 2/2/10, 2/5/10, 2/8/10)

3)  18 U.S.C. 1341 - Mail Fraud / (Earnest deposit returned 12/2009; Checks mailed to pay for termite and appraisal on or about 12/22/2009)
4)  18 U.S.C. 1001 – Statements generally /(False statements to HUD Investigator March 2010, False/Incomplete HUD-1 Settlement Statement 3/22/10)
5)  18 U.S.C. 1010 - HUD & FHA transactions /(False statements to HUD Investigator March 2010, False/Incomplete HUD-1 Settlement Statement 3/22/10)
6)  18 U.S.C. 1012 - HUD transactions/ (Willful over-valuing using counter offers on 2/3/10, 2/4/10, 2/5/10 and 2/8/10 with possession of 1/4/10 FHA appraisal )
7)  18 U.S.C. 1014 - Loan and Credit Applications/ (Willful over-valuing using counter offers on 2/3/10, 2/4/10, 2/5/10 and 2/8/10 with possession of 1/4/10 FHA appraisal)

## 18 U.S.C. 1962(a)

The income from the unlawful enterprise activity where the ultimate goal is to use Mortgage/Bank Fraud [**18 U.S.C. 1344; 18 U.S.C. 1014; and 18 U.S.C. 1010**] to maintain ownership rights of the property in case of loan default and to mask higher sales proceeds, broker and loan commissions.  The unlawfully obtained funds are invested back into the FANNIE MAE to distribute to the RICO enterprise.  FANNIE MAE then distributes funds to the designated title company for closing, funding and recording services and to a Broker realty firm to pay increased real estate commissions, broker incentives and loan incentives to the employees to keep the business operating until the next influx of FANNIE MAE-owned foreclosures from the over-valued mortgages.  The

over valued mortgaged properties are at highest risk for default and foreclosure.  These
over valued mortgage properties equate to job security for the RICO persons when these
properties become repeat FANNIE MAE foreclosures to sell.

FANNIE MAE is able to collect and prosper from this unlawful side business
throughout the United States where FANNIE MAE-owned single family homes are being
sold under exclusive broker realty and title/closing company contracts.  FANNIE MAE has
this unique market advantage to originate the misrepresented mortgage loans with higher
interest rates because FANNIE MAE loans do not require a property appraisal for newly
originated loans.  All other loans require an appraisal of property value by a licensed
appraiser. FANNIE MAE Buyers are enticed by saving $300 to $500 to use the "no cost"
appraisal option for financing with a FANNIE MAE loan.

The FANNIE MAE properties are initially listed for sale at a price considerably over
market value.  Non-broker represented Buyers are the main target market.  Fair market
pricing information is denied and intentionally withheld from the non-represented Buyer in
order to incite a maximum initial offer price.   A series of schemes to defraud the buyer
are utilized to inflate the property price during the offer stage if the initial offer price is not
sufficient.   Property value for the new FANNIE MAE mortgage; a mortgage now
represented as 95% loan-to-value, is based strictly on an agreed upon contract price
between the market-unaware-buyer and FANNIE MAE.

The RICO enterprise, through FANNIE MAE employees and agents, uses a series
of schemes to willfully over-value the property and defraud the buyers.  The schemes
including what the Plaintiff has named as: the "honest agent" scheme is used if the Buyer
comes directly to the designated realty firm without an agent; the "possibly made a
mistake" scheme where a series of competing bids are initiated and awarded in error to

restart the highest and best bid period for a second round of higher purchase offers; and the "white collar extortion" scheme used to hold the house hostage over the non-represented Buyer who starts suspecting irregular transaction activity.  If the Buyer threatens to terminate the sales contract to get independent broker representation, as a last option, a threat is made not to sell the property to the buyer if they return under the "white collar extortion" scheme.

All the schemes have one common purpose which is to maximize the purchase price to where the property is so willfully over-valued a FANNIE MAE loan is then the only affordable or possible loan.  The inflated sales price can not be supported by a fair market value appraisal which will eliminate other financing options.  These willfully over-valued properties are then transferred to other interstate financial institutions for funding and loan servicing under the authorization and closing coordination of the designated Title Officer.  Mail and Wire services are used to complete the sales transaction and funding of the FANNIE MAE mortgage loan [**18 U.S.C. 1341 and 18 U.S.C. 1343**]

### U.S.C. 18 §1962(c):

Plaintiffs allege Defendant Mary Berry, individually and d/b/a Century 21 All Pro Realty; Keenan Kirby; Genny Ulrey, individually and d/b/a Oklahoma REO Closing & Title Services, LLC; Jennifer Wiewel, Realtor; Laretta Murray, Realtor; and Ronald Murray, Realtor; are the "Enterprise" by association-in-fact for RICO claim U.S.C.18 §1962(c). The RICO persons/defendants for this RICO violation are: Mary Berry, individually and d/b/a Century 21 All Pro Realty (RICO enterprise upper management); Keenan Kirby (RICO enterprise upper management); Genny Ulrey (RICO enterprise upper

management); Jennifer Wiewel (RICO enterprise middle management); Laretta Murray

(RICO enterprise employee); and Ronald Murray (RICO enterprise employee).

Funding from the unlawful acts of the enterprise on March 22, 2010 when the

insufficient collateral mortgage loan was funded by bank wire increased property sales

income, mortgage interest, loan proceeds and fees [**18 U.S.C. 1343**].  These funds were

laundered through FANNIE MAE and Oklahoma REO Closing and Title Services, LLC,

passive, yet liable participants in this RICO violation section.  FANNIE MAE then

reinvested the funds back into the enterprise in the form of real estate commissions and

broker sales incentives to Century 21 All Pro Realty; title and closing fees paid to

Oklahoma REO Closing and Title Services, LLC; and salary and any other corporate

bonuses to Keenan Kirby, FANNIE MAE Assistant Vice President.

The real estate commissions and broker sales incentives were invested back into

Century 21 All Pro Realty to pay salaries, office expenses and real estate agent

commissions.  The loan and property sales proceeds were also invested back to FANNIE

MAE and Oklahoma REO Closing and Title Services, LLC to pay salaries, other

operating expenses and bonuses.

Defendant(s): Mary L. Berry, individually and d/b/a Century 21 All Pro Realty;

Defendant Keenan Kirby; Defendant Genny Ulrey; Defendant Jennifer Wiewel; Defendant

Ronald Murray and Defendant Laretta Murray all conspired with each other to engage in

a series of wrongful and illegal acts, including but not limited to, mail and wire fraud and

several counts of interstate financial institution fraud and resorting to submitting false

statements and documents to government officials to hide participation and to hide

adverse elements such as a known appraisal.

Defendants intentionally participated in this conspiracy and knowingly engaged in a pattern and practice of wrongful acts in order to originate mortgage loans with artificially inflated property values on previously foreclosed FANNIE MAE properties.  Mail and Wire services were used to complete the sales transaction, funding, and recording of the FANNIE MAE mortgage loan [**18 U.S.C. 1341 and 18 U.S.C. 1343**]

### U.S.C. 18 §1962(d):   Conspiracy

Plaintiffs allege the Defendants: Mary Berry, individually and d/b/a Century 21 All Pro Realty; Keenan Kirby; Jennifer Wiewel, Realtor; Laretta Murray, Realtor; and Ronald Murray; used a series of schemes: "Honest Agent"; "White Collar Extortion" and "Possibly made a Mistake", to willfully overvalue property to then defraud several financial institutions into funding and servicing these over 97% loan-to-value FANNIE MAE mortgages [18 U.S.C. 1344; 18 U.S.C. 1014] until the properties ultimately return to the sales inventory as repeat foreclosures when the Buyer can not refinance or sell property due to the inflated value.  Broker/Owner Mary Berry, d/b/a/ Century 21 All Pro Realty; Century 21 All Pro Realty Realtor/Employee, Jennifer Wiewel; Genny Ulrey, authorized signer for FANNIE MAE and officer of Oklahoma REO Closing and Title Services, LLC; and Fannie Mae Assistant Vice-President, Keenan Kirby; are the leaders of the FANNIE MAE, Century 21 All Pro Realty, and Oklahoma REO Closing and Title Services, LLC; Association-In-Fact RICO Enterprise.  Century 21 All Pro Realty, Real Estate Associates/Agents and Oklahoma REO Closing and Title Services, LLC., Title Officers also participated in one of the schemes.

### Scheme Phase 1 – Inflated List Price

Broker/Owner Mary Berry d/b/a Century 21 All Pro Realty uses <u>an inflated</u> property value, often a **Broker Price Opinion** in real estate Multiple Listing Service (MLS) as the property list price for Fannie Mae Real Estate Owned (REO) foreclosed properties.

<u>Facts:</u>

a) Subject property list price had recently been <u>reduced</u> to $119,900 when Plaintiff Gary Morris submitted an offer to purchase on 12/16/2009 (see Buyer Full Detail sheet from Laretta Murray dated 12/12/2009 at 5:17pm).

b) Plaintiffs told they did not need to pay for an appraisal for the subject property by Defendant/Agent Ronald Murray.

c) Subject property appraised at $109,000 on 1/4/2010, with condition that peeling suspected lead base paint house trim be painted.

<u>Result:</u> The initial list price is so over priced, especially for a real estate owned (REO)/ foreclosure property with "As-Is / No Seller Warranty" conditions that other local Real Estate Agents are essentially denied equal opportunity to sell Fannie Mae REO property.

<u>Benefit:</u> Fannie Mae originates a new 30 year mortgage loan and potentially earns inflated interest over 30 years loan when the contract property sales price does not conform to a certified appraisal at market value.

**NOTE:** If in Phase 1-"Inflated list price" scheme, the Buyer's initial offer price (under a Transaction Broker agreement with Century 21 All Pro Realty) for the purchase contract is not in range of the inflated or recently reduced inflated, list price, then Phase 2 - "Honest Agent" scheme is immediately implemented by the Century 21 All Pro Realty real estate agents.

**Scheme Phase 2 – "Honest Agent"**

Century 21 All Pro Realty Agents, serving as Transaction Brokers only for any Buyers for FANNIE MAE properties), give fraudulent statement leading unrepresented Buyers to believe they have Broker representation in the transaction while all Century 21 All Pro Agents are contractually obligated to represent only the interests of the Seller/Fannie Mae.  FANNIE MAE and Century 21 All Pro Realty have a standing Single-Party Broker contract.  One real estate agent from Century 21 All Pro Realty makes the fraudulent statements to gain access to confidential Buyer financial information and also to induce the (non-Broker represented) Buyer into signing the Transaction Broker agency disclosure.  Another Century 21 All Pro real estate agent becomes the sole agent of record, while the real estate agent who made the fraudulent statements claims "no involvement" in the transaction.  This "no involvement" claim is to evade responsibility for the fraud and make the Buyer's signing of the agency form appear valid.

Facts:

   a) Century 21 All Pro Realty Agents/Defendants Laretta Murray and Ronald Murray acted as Plaintiffs Morris' real estate agents on several instances during the period of 12/12/09 – 12/16/09 prior to the signing of the Purchase Contract.

   b) Defendant Ronald Murray told Plaintiffs on their first meeting December 12, 2009, that his wife, Defendant Laretta Murray, was supposed to show the property. Ronald Murray told Plaintiffs that Laretta Murray was absent because she was at church practicing with the choir to sing in the Christmas program.  Learning of Laretta Murray's involvement in her church choir led the Plaintiffs to a false sense

of trust that made them easy victims of the "Honest Agent" scheme of the enterprise.

c) Plaintiffs' Morris were told on 12/12/09 by Ronald Murray that they did not have to pay for an appraisal because there was a Broker Price Opinion on file.  Ronald Murray did not inform Plaintiffs that the ONLY loan this "no appraisal" option would satisfy was a FANNIE MAE mortgage loan.  Plaintiffs now believe this statement by Ronald Murray of saving on the cost of the appraisal was with intent to lead Plaintiffs into using a high interest rate FANNIE MAE loan.

d) Plaintiffs' Morris were led by the actions, statements and non-disclosure of the actual meaning of the single-party broker relationship of Defendants Laretta Murray and Ronald Murray with FANNIE MAE.  Plaintiffs Morris believed Agents Murray represented the Plaintiffs in the transaction by the numerous electronic mails, telephone conversations and faxing of Contract amendments/disclosures between 12/12/09 – 12/22/09.

e) Plaintiffs Morris relied on the belief that Defendants Murray were their real estate agents and shared confidential detailed financial information between 12/12/09 through 12/16/09.

f) At the Purchase Contract signing, C21 All Pro Realty Agent Laretta Murray, Defendant, told Plaintiffs/Buyers Morris a fraudulent statement that, "The employees on the other side of the C21 All Pro office were taking care of the Seller/Fannie Mae and they (Defendants Murray) were taking care of them (Plaintiffs Morris)."

g) Plaintiff Gary Morris questioned the Transaction Broker form prior to signing.  Gary and Candice Morris relied on Defendant Laretta Murray's fraudulent explanation of the form and Defendant Ronald Murray's subsequent affirmation by silence before signing the form.

h) Plaintiffs mailed a check made out to Red Rock Mortgage for the $350.00 FHA appraisal fee along with signed Contract addendums addressed to Laretta Murray at the Century 21 All Pro Realty office address in Oklahoma City, Oklahoma on or about the period between 12/21/09- 12/23/09.  (See email 12/21/09 from Shelby Weston to Candice Morris and 12/29/09 email from Candice Morris requesting confirmation of receipt of appraisal payment check to S. Weston).

Result:

a) Buyers unaware they were without benefit of Realtor representation in a real estate purchase transaction valued over $100,000.00.  Plaintiff/Buyers denied benefit of honest services.

b) Buyers denied access to beneficial real estate purchase information:

   i. Fannie Mae can pay percentage of Buyers closing cost.

   ii. Area Comparable Sales price information to make informed offers to purchase "as-is"/no warranty foreclosure properties.

Enterprise Benefit:  Century 21 All Pro Realty and Agents earn additional commission from procurement of non-Broker Represented Buyer.

**NOTE:**  If "Honest Agent" scheme fails **or** Buyer discovers meaning of the Transaction Broker agreement they signed, then the Real Estate Agent gets the Broker involved. Phase 3 – the "White Collar Extortion" scheme is implemented.

### Scheme Phase 3 – "White Collar Extortion"

Century 21 All Pro Realty Broker/Owner Mary Berry makes threats to Buyer (i.e. – "You [Buyer] can cancel and I [Broker] will even return your deposit to you, but I [Broker] will not sell that house to you [Buyer]").  Mary Berry, Broker/Owner then effectively holds the house hostage as leverage to keep the Buyer from canceling the purchase contract if the Buyer realizes they have no broker representation for their best interest in the transaction.  Mary Berry, Jennifer Wiewel and Keenan Kirby execute this scheme.

Facts:

a) Century 21 All Pro Realty Broker, Mary Berry told Plaintiffs Morris on 12/22/09 they had been given a "good" price on the property and Broker would not present their verbal counter offer for FANNIE MAE to pay closing cost.

b) No further appraisals after the January 4, 2010 FHA appraisal (HK533OKC) were performed prior to Red Rock Mortgage funding the existing FANNIE MAE mortgage loan on March 22, 2010 for the subject property.

**NOTE:**  If Buyer cancels purchase contract with Century 21 All Pro Realty associates and comes back with an outside Broker; then Phase 4 - "Possibly made a Mistake" scheme to obtain maximum sales price is initiated.

### Scheme Phase 4 – "Possibly made a Mistake"

Mary Berry, d/b/a Century 21 All Pro Realty; Employee Jennifer Wiewel and Fannie Mae Assistant VP Kirby needed the authority of their legitimate business positions with Century 21 All Pro Realty and FANNIE MAE to execute this scheme with the maximum profit to the enterprise. The enterprise leaders worked during 2/5/10 through 2/8/10 to manipulate contract responses to obtain highest possible purchase prices. The enterprise leaders use Buyer's financial information obtained from the previous fiduciary relationship to willfully overvalue the property purchase price to the Buyer's maximum loan approval amount of $115,000.00 stated on Gary Morris's FHA Loan Commitment letter dated 12/15/09 that was submitted to FANNIE MAE, Century 21 ALL Pro Realty, Broker Berry, Keenan Kirby, Ronald Murray, Laretta Murray and Jennifer Wiewel on 12/16/09 with the Plaintiff(s) first Offer to Purchase.

Facts:

a) Plaintiffs Morris and an unknown (suspected non-existent) Buyer were supposedly in multiple offers on February 5, 2010 in late afternoon after 4pm. Plaintiffs and Unknown Buyer given "highest and best" bid period to submit offer.

b) Plaintiffs Morris were told on February 8, 2010 that they lost the subject property to a higher bidder. Plaintiffs' bid was $113,200.00

c) Plaintiffs Morris on next day informed there "might have been a mistake".

d) Plaintiffs Morris were still not awarded the sales contract on February 9, 2010, after possible mistake admitted.

e) Plaintiffs Morris were then informed to submit another "highest and best" bid.

f) Plaintiffs Morris raised offer price to their pre-approval maximum of $115,200.00 to secure the purchase contract for the property on 2/10/10.

g) Jennifer Wiewel, admitted under oath to HUD Investigator E. Garza in a written HUD investigation response during late February-mid March 2010 that she "might have made a mistake". Wiewel used fiduciary information from a previous transaction with the Plaintiffs.

### Scheme Phase 5 – Misrepresenting the 97% loan-to-value mortgage

The participant leaders: Defendant Mary Berry, individually and d/b/a Century 21 All Pro Realty; Keenan Kirby; Genny Ulrey, individually and d/b/a Oklahoma REO Closing & Title Services, LLC; and Jennifer Wiewel, Realtor; defrauded financial institutions concerning the Buyer(s) loan of $111,744.00. The FANNIE MAE loan was represented to be a 97% loan-to-value mortgage. The January 4, 2010 appraisal value of $109,000 is evidence the $115,200.00 sales price value loan is <u>over</u> 100% of the value of the property. The enterprise leaders coordinated the origination, funding, and recording of a new thirty year FANNIE MAE mortgage loan of $111,744.00 on March 22, 2010, after willfully over-valuing the subject property in Oklahoma City.

The $350.00 cost for the 1/4/10 certified FHA appraisal was deliberately omitted on the HUD-1 Settlement Statement by the enterprise leaders and their Closing/Title Agent with intent to hide the existence of the $109,000.00 appraisal value of the property. The $111,744.00 mortgage loan on a property only valued at $109,000.00 would have been an obvious indication of an insufficient collateral loan. The 3/22/10 HUD-1 Settlement Statement was to have been submitted and filed with the U.S. Department of Housing

and Urban Development.  Genny Ulrey of Oklahoma REO Closing & Title Services, LLC.

signed and certified this HUD-1 document on behalf of FANNIE MAE.

Facts:

a)  Defendant Broker Berry summarized in her February-March 2010 HUD investigation
    response that the Defendants were treated like all other Century 21 All Pro Realty
    clients and transactions.  This would imply there might be other General Public
    victims of the schemes of the enterprise.

b)  Title 59 of Oklahoma Statues has established real estate guidelines that are
    governed by the Oklahoma Department of Real Estate.  Dishonesty, such as
    submitting false/inaccurate reports (HUD-1 Settlement Statement) to government
    officials, in real estate dealings is a violation of Title 59 O.S.


**5. (d)**  There has not been a criminal conviction for violation of any predicate act.

**5. (e)**  No civil litigation on Plaintiffs behalf has resulted in judgment in regard to the
predicate acts.

**5. (f)**  The alleged predicate acts of Bank Fraud, Wire Fraud and Mail Fraud used by the
enterprise form a "pattern of racketeering activity" in that the schemes used by the
enterprise to accomplish the main unlawful act of bank/mortgage fraud is facilitated by
the use of wire and U.S. mail service to fund and secure the fraudulently represented
loans and to further the operations of the enterprise.

**5. (g)**  The alleged predicate acts of Bank/Mortgage Fraud, Wire Fraud and Mail Fraud
relate to each other as part of a common plan of the enterprise.  The wire and mail
services are essential in completing the Bank/Mortgage Fraud tasks of the enterprise as

Oklahoma REO Closing & Title Services typically funds the loans by wire service and mails the recorded documents after completion of the transaction; and all the RICO realty persons and entities use wire service to expedite transmission of contracts, documents and amendments by fax.

**6.   (a)** The enterprise (association-in-fact) consists of: Defendant Mary Berry, individually and d/b/a Century 21 All Pro Realty; Keenan Kirby; Genny Ulrey, individually and d/b/a Oklahoma REO Closing & Title Services, LLC; Jennifer Wiewel, Realtor; Laretta Murray, Realtor; and Ronald Murray- through their roles and authority with FANNIE MAE; Century 21 All Pro Realty; and Oklahoma REO Closing & Title.

**6.   (b)** The RICO enterprise is structured with the named employees and agents of FANNIE MAE; Century 21 All Pro Realty; and Oklahoma REO Closing & Title Services, LLC, as the "association-in-fact" enterprise.  The enterprise originates from the exclusive contract with Century 21 All Pro Realty to sell and solely represent FANNIE MAE and Oklahoma REO Closing & Title Services to facilitate the transaction closing and funding of FANNIE MAE foreclosure properties in parts of Oklahoma.

The racketeering activity of the enterprise operates with the purpose of collecting funds from the unlawful activity of the bank/mortgage fraud.  The funds from the unlawful activities are then reinvested into FANNIE MAE and distributed as legitimate funds to support and maintain the "association-in-fact" back office enterprise.  The unlawful activity of the enterprise is conducted under the legitimate business names of FANNIE MAE, Century 21 All Pro Realty, and Oklahoma REO Closing & Title Services.  The unlawful back-office activities of the enterprise are masked by the legitimate daily operations of the three companies.

Several schemes are used by the enterprise to overvalue FANNIE MAE
foreclosures sales prices and then induce Buyers to obtain over-valued, higher interest
rate FANNIE MAE mortgages during the sales transaction.  The course of conduct of the
enterprise in their pattern of racketeering activity, where mail and wire fraud and several
other unlawful acts result in a falsely represented 97% loan-to-value mortgage, which is
actually a loan over 100% of the value.  These fraudulent loans are currently backed by
the U.S. Treasury while FANNIE MAE is under government conservatorship.

**6.  (c)**  Mary Berry as Broker and Owner of Century 21 All Pro Realty is part of the
enterprise by association-in-fact.

**6.  (d)**  The following defendants are associated with the alleged enterprise:

> 1)  Mary Berry, d/b/a Century 21 All Pro Realty – individual and the enterprise by
>     association-in-fact with FANNIE MAE
> 2)  Keenan Kirby – individual
> 3)  Genny Ulrey - individual
> 4)  Jennifer Wiewel - individual
> 5)  Laretta Murray – individual
> 6)  Ronald Murray – individual

**6. (e)**  1)  Mary Berry, d/b/a Century 21 All Pro Realty – individual, and the enterprise
>       by association-in-fact
> 2)  Keenan Kirby – individual, and the enterprise by association-in-fact
> 3)  Genny Ulrey – individual and as Oklahoma REO Closing & Title Services, LLC
>     – the enterprise by association- in-fact / separate entity
> 4)  Jennifer Wiewel – individual, and the enterprise by association-in-fact
> 5)  Laretta Murray – individual, and the enterprise by association-in-fact
> 6)  Ronald Murray – individual, and the enterprise by association-in-fact

**6.  (f)**  <u>FANNIE MAE and Oklahoma REO Closing and Title Services,LLC.</u> are passive instruments functioning as an association-in-fact component of the enterprise which allows the enterprise to function unnoticed in the alleged violation of 18 U.S.C. § 1962(c). Holders of FANNIE MAE stock are actual victims of the alleged racketeering activity because they have essentially invested in inflated stock when the security used for the FANNIE MAE loans (the property) is insufficient collateral.

**7.**  Plaintiffs allege the pattern of racketeering activity is separate from the daily legal functions of the enterprise.  The Buyers and mortgages targeted for the bank fraud of the enterprise are FANNIE MAE Buyers and FANNIE MAE loans.  The FANNIE MAE loan is strategically or financially forced on Buyers who initially are using the more affordable HUD-FHA loans.

**8. The alleged relationship between the activities of the enterprise and the pattern of racketeering activity:**

The usual and daily activities of the companies of FANNIE MAE; Century 21 All Pro Realty; and Oklahoma REO Closing & Title Services, are a legal financial institution for mortgage loans; real estate transactions helping Buyers and Sellers; and Closing and title transfer services for real estate sales and purchases. **The Difference** under the racketeering activities of the association-in-fact unlawful enterprise is that FANNIE MAE mortgage loans with insufficient collateral are willfully originated and transferred to banks and financial institutions with the help of the designated Realtors and Title Company. [18 U.S.C. 1344 - Bank Fraud] and Buyers of FANNIE MAE-owned properties are used as the instruments to maximize profits.

**9. The alleged enterprise receives benefit from the alleged pattern of racketeering**

a)  Increased sales proceeds and commissions; b)  An insufficient collateral mortgage loan;  c) Increased likelihood of repeat FANNIE MAE property ownership for resale resulting in job security for the Oklahoma area FANNIE MAE foreclosure executives; employees; title companies and employees; and single-party broker representatives; and d) Broker sales incentives.

**10. The effect of the activities of the enterprise on interstate commerce:**

The insufficient collateral mortgage loans impact interstate commerce when banks and other financial institutions transfer and service these fraudulent loans.  The unlawful conduct of the enterprise in completing the mortgage fraud operation utilizes mail and wire services which violates 18 U.S.C. 1341 and 18 U.S.C. 1343.

**11.  Plaintiffs are alleging violation of 18 U.S.C. § 1962(a).**

**(a)** FANNIE MAE employees and agents involved in the RICO enterprise all receive income derived from the pattern of racketeering by the property sales and loan proceeds.  **And (b)** The income is funded by Oklahoma REO Closing & Title Services when the property sale is completed by their agents/employees.  The funds are then invested back into the RICO enterprise in the form of increased property sales proceeds, real estate commissions and broker incentives paid to Broker of Century 21 All Pro Realty; back into FANNIE MAE to pay salaries and loan incentives to the employees; and back into Oklahoma REO Closing & Title Services to pay salaries and operating costs.

**11.  The complaint alleges a violation of 18 U.S.C. § 1962(c).**
**(a) Employed by or associated with the enterprise;**

1.)  Mary Berry, d/b/a Century 21 All Pro Realty – employed by the enterprise and association-in-fact with the enterprise
2.)  Keenan Kirby – employed by the enterprise under FANNIE MAE
3.)  Genny Ulrey – Power of Attorney to sign for FANNIE MAE and employed by the

enterprise under Oklahoma REO Closing & Title Services

4.) Jennifer Wiewel – employed by the enterprise under Century 21 All Pro Realty

5.) Laretta Murray – employed by the enterprise under Century 21 All Pro Realty

6.) Ronald Murray – employed by the enterprise under Century 21 All Pro Realty

**(b) State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

1.) Mary Berry, d/b/a Century 21 All Pro Realty – liable person & the enterprise by "association-in-fact"

2.) Keenan Kirby – liable person and part of the enterprise

3.) Genny Ulrey – liable person and part of the enterprise

4.) Jennifer Wiewel – liable person and part of the enterprise

5.) Laretta Murray – liable person and part of the enterprise

6.) Ronald Murray – liable person and part of the enterprise

**12.  The conspiracy details of alleged violation of 18 U.S.C. § 1962(d):**

Defendants work together using their skills and authority of their regular business capacity to target and defraud Buyers of FANNIE MAE owned foreclosure properties and to defraud financial institutions to fund operation of their unlawful enterprise.

The Defendant - Real Estate Associates of Century 21 All Pro Realty first use a scheme "Honest Agent" to fraudulently induce the Buyers of FANNIE MAE owned homes to execute a real estate purchase contract without independent Realtor representation on their behalf. The Defendants while portraying themselves to be honest, church-going advocates of the Buyer intentionally fail to disclose material information needed for the Buyers to make informed purchase decisions.

When the Buyers are emotionally attached to the property, the Broker/Owner implements the enterprise "White Collar Extortion" scheme.  Broker and employees use the confidential financial information obtained on the required loan pre-approval letter and

other information obtained during the fiduciary relationship to hold the property hostage from the Buyers to extort their maximum approved purchase price and additional interest.

The Defendants Mary Berry, Keenan Kirby and Jennifer Wiewel (upper and middle enterprise management) take over the unlawful activity of the enterprise after an offer is submitted to purchase a FANNIE MAE property with an outside Broker. These RICO persons jointly use what the Plaintiffs refer to as the "Possibly made a Mistake" scheme to maximize sales proceeds using a series of "highest and best" bid period between a real or strategically procured unknown Buyer. During this scheme, the Buyer who won the purchase contract for the property has ended up with an inflated purchase price that an appraisal will likely not support. The Buyers use the only mortgage loan option that does not require an appraisal, a FANNIE MAE loan.

The willfully over-valued loans are then funded and titles transferred by Oklahoma REO Closing and Title Services, LLC and Genny Ulrey with full knowledge of the insufficient collateral value. The fraudulently procured loans are represented and transferred in the mortgage market as 97% loan-to-value when in actuality the loan-to-value exceeds 100% of the property value.

**13. The alleged injury to business or property** is that The Buyers purchase an "as-is" foreclosure property without the usual Seller warranty or disclosures, <u>above</u> fair market value. The Buyer is induced into using the "no appraisal – save $400", FANNIE MAE mortgage with higher interest rates and loan fees. The over-valued property mortgage leaves the new homeowner at the highest risk for default and foreclosure when they can not refinance or sell the property for what they owe FANNIE MAE.

The FANNIE MAE mortgage loan is represented by the enterprise as 97% loan-to-value when it is actually a much higher loan-to-value ratio that is then transferred with insufficient collateral to unsuspecting financial institutions resulting in bank fraud.

**14. The direct causal relationship between the alleged injury and the violation of the RICO statute:**

The bank/financial institution fraud [18 U.S.C. 1344] and subsequent use of mail fraud [18 U.S.C. 1341] and wire fraud [18 U.S.C. 1343] injured the Buyers/Plaintiffs financially. There is immediate financial injury when the Buyer pays over market value for a 75 year old, two bedroom "as-is" foreclosure property with needed repairs.  There is long term financial injury to the Buyer while the Buyer is paying the additional monthly interest charges on the FANNIE MAE loan after becoming victims of the scheme to defraud and denied honest services.

**15. The following are damages sustained for which each defendant is allegedly liable.**
Extreme Emotional Distress: Mary Berry, individually and d/b/a Century 21 All Pro Realty; Keenan Kirby; Genny Ulrey; Jennifer Wiewel; Laretta Murray; and Ronald Murray.

Additional Purchase Price: Keenan Kirby; Mary Berry, individually and d/b/a Century 21 All Pro Realty; Genny Ulrey; Jennifer Wiewel; Laretta Murray; and Ronald Murray

Higher Interest/Monthly Mortgage Payment:  Keenan Kirby; Genny Ulrey; Mary Berry, individually and d/b/a Century 21 All Pro Realty; Jennifer Wiewel; Laretta Murray; and Ronald Murray

Lack of Seller Paid Closing Cost: FANNIE MAE, Keenan Kirby; Mary Berry, individually and d/b/a Century 21 All Pro Realty; Jennifer Wiewel; Laretta Murray; Ronald Murray

Additional FANNIE MAE loan fees: Keenan Kirby; Mary Berry, individually and d/b/a Century 21 All Pro Realty; Genny Ulrey; Jennifer Wiewel; Laretta Murray; and Ronald Murray

Loss of FANNIE MAE advertised 3.5% New Appliance/Buyer Incentive Offer:  FANNIE MAE, Keenan Kirby; Mary Berry, individually and d/b/a Century 21 All Pro Realty; and Jennifer Wiewel

**Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 84 AND the RICO Case Statement -RESPONSES as though fully set forth herein.**

**RELIEF REQUEST:**

**WHEREFORE,** Plaintiffs Gary and Candice Morris pray for Affirmative Relief on their Petition for Damages as follows:

1. A judgment against Defendants and each of them for compensatory and punitive damages in an amount in excess of $10,000.00, to be assessed by the jury together with statutory interest from the date of the filing of this Petition for the wonton, malicious, and intentional actions to induce Plaintiffs to enter a purchase contract where their own representatives, Defendants and each of them, possessed an adverse interest and intended to deprive Plaintiffs of the benefit of their bargain (first cause of action);

2. A judgment against Defendants and each of them for compensatory and punitive damages in an amount in excess of $10,000.00, to be assessed by the jury together with statutory interest from the date of the filing of this Petition for the willful, malicious, wonton and intentional breach of fiduciary duties owed to Plaintiffs as Plaintiffs real estate agents in the subject transactions to purchase their home (second cause of action);

3. A judgment against Defendants and each of them for compensatory and punitive damages in an amount in excess of $10,000.00, to be assessed by the jury together with statutory interest from the date of the filing of this Petition for the wonton, malicious, and intentional false representations and willful, knowing, utter disregard to the harmful and substantial damages suffered by Plaintiffs when Defendants, and each of them, failed to disclose material facts while under a duty to so disclose in the instant transaction (third cause of action);

4. A judgment against Defendants named for compensatory and punitive damages in an amount in excess of $10,000.00, to be assessed by the jury together with statutory interest from the date of the filing of this Petition for malicious, willful and intentional misrepresentations and misconduct which were the proximate cause of Plaintiff's pecuniary losses, and caused them to suffer extreme emotional distress which harmed their physical and emotional health (fourth cause of action);

5. A judgment against Defendants and each of them for the willful, wonton and malicious violation of Oklahoma State Statute section 15-751, et.seq. known as the Consumer Protection Law. Plaintiffs request the maximum amount of damages available pursuant to this statute for damages suffered as a proximate result of violations by Defendants, and each of them (fifth cause of action);

6. A judgment against Defendants named jointly and severally, for three times the amount of damages assessed, punitive damages, and costs of suit and attorneys fees for their violation of 18 U.S.C. sections 1962; Plaintiffs requests all statutory relief available for the intentional, willful, and malicious misconduct of Defendants and each of them in their violation of federal laws (sixth cause of action);

7. For reasonable attorneys fees and costs of suit; and,

8. For such other and further relief as this Court deems just and proper.

Submitted under penalty of perjury on this ____ day of November, 2011:


GARY MORRIS                         CANDICE MORRIS
Pro Se Plaintiff                    Pro Se Plaintiff
P.O. Box 57403                      1805 NE 67th Street
Oklahoma City, OK 73157             Oklahoma City, OK 73111
(214) 628-1817                      (214) 628-1817